# Maniatakis' Estate.

*Contracts—Statute of limitations—Tolling of statute—Acknowledgment of debt—Evidence—Sufficiency—Decedents' estates.*

1. A clear, distinct and unequivocal acknowledgment of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute of limitations. There must, however, be no uncertainty, either in the acknowledgment or in the identification of the debt. A mere expression of willingness or desire is insufficient.

2. There can be no more unequivocal acknowledgment of a present existing debt than a payment on account of it, and according to all the authorities that is all that is required to take a case out of the statute of limitations.

3. A tender of payment on account of a debt, although not accepted by the creditor, is equivalent to payment in so far as evidence of acknowledgment of the existence of the debt is concerned.

4. At the audit of the account of the executors of a decedent's estate, in 1916, claim was made for an indebtedness incurred by decedent in 1908. It appeared that sometime between 1912 and

1914, an agent of the creditor had demanded payment of decedent and decedent had tendered him $50 in part payment of the indebtedness, which the agent refused. *Held,* the tender was a sufficient reacknowledgment of the debt to toll the bar of the statute of limitations, and the claim was properly allowed.

Argued Feb. 26, 1917. Appeal, No. 32, Oct. T., 1917, by James Pappas, Polizoin Maniatakis and Leonidas Maniatakis, from decree of O. C. Allegheny Co., Sept. T., 1916, No. 56, dismissing exceptions to adjudication, in Estate of Andros Maniatakis, Deceased. Before BROWN, C. J., MESTREZAT, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Exceptions to adjudication. Before MILLER, J.
The opinion of the Supreme Court states the facts.
The court dismissed the exceptions. James Pappas, Polizoin Maniatakis and Leonidas Maniatakis appealed.

*Errors assigned* were in dismissing the exceptions.

*Saul Schein,* for appellants.—The evidence produced in support of the appellee's claim is not sufficient to toll the bar of the statute of limitations: Miller v. Baschore, 83 Pa. 356; Hartranft's Est., 153 Pa. 530; Drawbaugh v. Drawbaugh, 7 Pa. Superior Ct. 349; Love v. Hough, 2 Philadelphia 350; Laforge v. Jayne, 9 Pa. 410; Foringer v. Sission, 14 Pa. Superior Ct. 266; Kensington Bank v. Patton, 14 Pa. 479.

The debt was not revived by an unaccepted tender on account: Shreiner v. Cummins, 63 Pa. 374; Drawbaugh v. Drawbaugh, 7 Pa. Superior Ct. 349; Simrell v. Miller, 169 Pa. 326; Huff v. Henderson, 19 Pa. 388.

*W. D. N. Rogers,* with him *O. S. Richardson,* for appellee.—The statute will always be tolled by an unequivocal acknowledgment of the debt as a subsisting ob-

ligation or an acknowledgment of the debt which is not inconsistent with a promise to pay: Tyers v. Kuhn, 52 Pa. Superior Ct. 24; Fries v. Boisselet, 9 S. & R. 128; Huff v. Richardson, 19 Pa. 388.

OPINION BY MR. JUSTICE FRAZER, April 30, 1917:

This appeal is by legatees under the will of Andros Maniatakis from the decree of the Orphans' Court, awarding the entire fund in the hands of the executor to George P. Calogera, on account of a claim of the latter against a partnership of which deceased had been a member. There was no dispute as to the amount of the claim, $5,411.27, or at least that the amount was sufficient to cover the entire balance for distribution, and the only question involved is whether there was sufficient evidence of acknowledgment of the debt and promise to pay to toll the statute of limitations.

In 1908, and previous thereto, decedent was a partner with one Caroogianis in the retail grocery business in Pittsburgh, and claimant a wholesale grocer in New York, from whom the partnership purchased merchandise. An account remained unpaid, which amounted to the claim presented, and further credit was refused. In November, 1909, claimant visited Pittsburgh to either collect or secure payment of the indebtedness; the firm, however, being unable to pay at the time, by agreement of the parties the account was placed for collection in the hands of John Andrews, a mutual friend. In an interview with the partners in December, 1909, Andrews informed them of having received orders from Calogera to close their store, but preferred not to do so, whereupon payment of part of the claim "after Christmas" was promised. No payment was made, though frequent assurances were given, and later the firm property was seized and sold by the landlord under a distress for rent. All demands by Andrews for payment were met with substantially the same response—that the debtors were willing to pay but were without funds to do

so. In the summer of 1911, deceased having acquired a half interest in another business, informed Andrews he owed for the purchase of his interest and as soon as that indebtedness was paid he would make payments on the Calogera account, "maybe half share or maybe the full amount." Later deceased disposed of this interest in the business referred to, but made no payment to Andrews. The last interview took place three weeks before decedent was removed to the hospital, which was shortly before his death. The date of this interview does not clearly appear, but, according to the testimony of Andrews, it was not earlier than 1912. Another witness fixed the time as in 1914. The account was audited in September, 1916, consequently the exact date is immaterial, since the conversation was had at least within the statutory period. Andrews testified that at this interview decedent tendered him fifty dollars in part payment of the indebtedness, which amount he refused to accept on account of a debt of over five thousand dollars, saying, "keep it to buy stamps." His version of the conversation was given as follows, on cross-examination: "He offered me fifty dollars and I said, 'Andy, think for me, you got what you got the last time,' and so he offered me fifty dollars and as soon as he got the money [from the man who bought his interest] to give me some more, and I said, 'You keep it.' I was ripping mad. I don't want to lose my temper, I said, 'You better buy stamps, I don't think Calogera needs that.'......I said 'After you owe $5,000 you give me $50 to send it.' Q. He denied that? A. No, he said 'As soon as I get the money I send it.'" This testimony was corroborated by two witnesses; one testified to the offer of fifty dollars and the refusal of Andrews to receive that amount for the reason the payment was too small considering the amount of the account; he admitted, however, not having actually seen the money; and the other witness testified to having seen decedent take "out of his pocket two twenty-dollars bills and one ten-dollar bill and give to Andrews,

and he says 'Why did you give me that money, mercy—
for five thousand dollars, you try to give me fifty dollars.'
Q. What else did he say?    A. Then I left him there, be-
cause I had to go to work.    I don't know what they done
afterwards.    What I hear is that 'You take this fifty
dollars and later on I give you some more.'......Q. And
you saw that there were two twenty-dollar bills and one
ten-dollar bill?    A. He take a roll of money out of his
pocket and I saw he was trying to give him two twenty-
dollars and one ten-dollar."

A clear, distinct and unequivocal acknowledgment of
a debt as an existing obligation, such as is consistent
with a promise to pay, is sufficient to toll the statute:
Palmer v. Gillespie, 95 Pa. 340; Wells v. Wilson, 140
Pa. 645.    There must, however, be no uncertainty either
in the acknowledgment or in the identification of the
debt: Landis v. Roth, 109 Pa. 621; and the acknowledg-
ment must be plainly referable to the very debt upon
which the action is based: Burr v. Burr, 26 Pa. 284;
Clark v. Maguire, 35 Pa. 259; and also must be con-
sistent with a promise to pay on demand and not accom-
panied by other expressions indicating a mere willing-
ness to pay at a future time: Keener v. Zartman, 144
Pa. 179.    A simple declaration of an intention to dis-
charge an obligation is not the equivalent of a promise
to pay, but is more in the nature of a desire to do so,
from which there is no implication of a promise.    "To be
consistent with a promise to pay the debt, the acknowl-
edgment must be such as indicates an intention to pay
the debt existing at the time of the acknowledgment.
The time of payment need not be immediate, but the in-
tention to pay must be present.    Hence any language
inconsistent with this present intention must be incon-
sistent with a new promise.......An acknowledgment is
less in force than a promise, and hence the necessity of
scrutinizing closely the extent of meaning the language
of the acknowledgment has": Senseman et al. v. Hersh-
man & Houser, 82 Pa. 83, 85.    In Miller v. Baschore, 83

Pa. 356, a letter from the debtor to the creditor acknowledging the existence of the debt, but not stating the amount and concluding with a promise after other persons to whom the debtor owed money were paid, as follows: "I will pay you all I owe you, and if I can do anything for you before that time I will do so, you need not trouble yourself about me that I will not pay you, for I expect to pay all I owe," was held to be insufficient to toll the statute for the reason, as stated, "there is nothing specific or definite, for it is not stated what note is referred to, neither is the amount of the balance indicated; ......the defendant promises to pay a balance of a note, but neither note nor balance is stated; he promises to pay what he owes, but whether that is much or little we are not informed; there is, in fact, neither the required certainty nor perspicuity in the evidence produced to break down the defense."

In the present case the various promises made by deceased to pay when able seem insufficient to remove the bar of the statute under the rules of law established by the cases above referred to. There is no doubt, however, as to the identification of the debt itself. There was but one account between the parties, and the amount had been determined upon, and was not any time denied or disputed in their various conversations. To establish an acknowledgment of the debt or promise to pay, claimant relies upon what took place at the last interview between Andrews and deceased, and offers as a substitute for payment, or part payment, the tender of $50.00, on account of the debt, the amount of which was specifically referred to by the parties in the interview.

A payment on account of the debt is sufficient recognition of the indebtedness to toll the statute. "There can be no more unequivocable acknowledgment of a present existing debt than a payment on account of it, and, according to all the authorities, that is all that is required to take a case out of the statute of limitations. But then it must plainly appear, and not be a matter of conjecture

merely, that the payment was made on account of the very debt which is in dispute": Barclay's App., 64 Pa. 69. In Tyers v. Kuhn, 52 Pa. Superior Ct. 24, 28, the above language was quoted and that court held a payment of $50.00, accompanied by a letter in which defendant said, "I do not know of my own knowledge what I owe you but I have no doubt you have it correct. I'll send you some from time to time as I can until it is paid," was sufficient to toll the statute where a statement of the balance had been previously sent by defendant to plaintiff, and there was no evidence of other debt to which the payment could be applied.

In our case the tender of payment on account was not in fact accepted by the creditor, and the question arises whether such tender is equivalent to payment in so far as evidence of acknowledgment of the existence of the debt is concerned. Ordinarily a tender of money does not operate as a satisfaction of the debt, or a part of it, as the case may be, and does not bar an action thereon: 38 Cyc. 162. But to the extent of a recognition or acknowledgment of the existence of an indebtedness it is unconditional, and where there is a tender of a part of the debt only, accompanied by a distinct acknowledgment of the existence of the remainder, we see no reason in principal for holding its effect as admission must depend upon whether or not the amount tendered was actually accepted by the creditor.

As a rule the refusal of a tender is founded on different grounds from those on which the partial payment was declined in this case, and, consequently, gives rise to the question as to whether the tender was sufficient and should have been accepted by the party to whom made. The refusal of an offer of payment on account for the reason appearing here is unusual, and such refusal, for the reason stated, can have no effect on the legal question involved in the transaction. As an acknowledgment of the debt the tender must be given the same effect as if payment had been accepted by the creditor.

Counsel for appellants relies upon Huff v. Richardson, 19 Pa. 388, as authority for their contention that an unaccepted tender is not sufficient acknowledgment of the debt to toll the statute. In that case the decision was based on an insufficient acknowledgment of the amount of the balance due, in that the promise to pay the balance was without basis·from which the amount of the debt was ascertainable. True the court stated (page 390) : "Equally vague and unsatisfactory was the evidence of acknowledgment derived from the defendant's offering the plaintiff· a horse on account, which did not suit the plaintiff. Part payment of a debt is acknowledgment, but the offer of a horse, not accepted, is not." This language does' not necessarily indicate that an offer to pay a debt in part, whether in cash or in property, is not a sufficient acknowledgment of the indebtedness. It merely signifies that an offer of property not accepted is not a valid tender, and is consistent with the general rule of law that payment on a contract cannot be made other than in money, unless the creditor consents thereto or acquiesces therein : 30 Cyc. 1187. In the case cited, instead of there being a consent to the tender of payment, the creditor expressly dissented, stating "the horse did not suit him." It is, therefore, not authority for the proposition that a legal tender of cash on account of a recognized claim is insufficient, under any circumstances, to show such acknowledgment of the existence of the debt as will toll the statute.

The judgment is affirmed.