**S.T. HUDSON ENGINEERS, INC., Appellee,**

v.

**CAMDEN HOTEL DEVELOPMENT ASSOCIATES and Camden Waterfront Development Corporation and Malcolm Lazin, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1999.
Filed Feb. 25, 2000.

Malcolm L. Lazin, Philadelphia, for appellants.

Edward V. Cattell, Jr., Philadelphia, for appellee.

Before JOHNSON and STEVENS, JJ., and CIRILLO, President Judge Emeritus.

STEVENS, J.:

¶ 1 This appeal is from the judgment entered in the Court of Common Pleas of Philadelphia County following the denial of Appellants Camden Hotel Development Associates (CHDA), the Camden Waterfront Development Corporation (CWDC) and Malcolm Lazin's request for post-trial relief. After a review of the certified record and the briefs of the parties, we affirm.

¶ 2 The relevant facts and procedural history are as follows: Appellee S.T. Hudson, Engineers, Inc. entered into a contract with CHDA and CWDC dated October 31, 1989,[1] for engineering services related to the development of a hotel/conference center to be located on the Camden, New Jersey waterfront.[2]

¶ 3 CHDA entered into an option agreement in September, 1989 with NJEDA and Coopers Ferry, designating an approximate three acre site for the hotel/conference center. On January 4, 1990, Malcolm Lazin, President of the Managing General Partner, CHDA, the partnership/developer, entered into a contract for predevelopment engineering services with Appellee for the amount of thirty six thousand nine hundred dollars ($36,900.00). This agreement provided that Appellee perform various civil engineering services and begin work on drafting a Waterfront Development Permit Application to be submitted to the New Jersey Department of Environmental Protection. Subsequently, through several oral modifications to the original agreement, Appellee continued to perform engineering services on behalf of Appellants' permit application throughout January and February, 1990. Appellants were billed regularly for these services pursuant to the agreement.[3]

¶ 4 On December 30, 1992, NJEDA and Cooper's Ferry terminated the option agreement of Appellant CHDA. As a result of this termination, CHDA and CWDC instituted a lawsuit against NJEDA and Cooper's Ferry in federal district court.[4] Said action requested, among other relief, reimbursement for out of pocket expenses, and amounts owed to Appellees.

¶ 5 In September, 1997, a jury trial regarding Appellants' claim against NJEDA and Cooper's Ferry commenced in New Jersey Federal District Court. The matter settled, resulting in a seven hundred

---

1. In 1989, CHDA won a bid from the New Jersey Economic Development Authority (NJEDA) and Coopers Ferry Development Association, Inc. (Coopers Ferry) to develop a hotel/conference center to be located on the Camden, New Jersey waterfront.

2. Appellee is a Pennsylvania Corporation and maintains an office in the Commonwealth. CHDA is a Pennsylvania partnership and CWDC is a Pennsylvania Corporation. Malcolm Lazin is a Pennsylvania resident and the contract at issue was executed in Pennsylvania. Thus, jurisdiction properly lies in this Commonwealth.

3. The trial court found that during this period, the dealings between Appellee and Appellants established a course of conduct by which the contract was orally modified on various occasions.

4. See CHDA and CWDC v. NJEDA and Coopers Ferry, USDC NJ, Civil Action No. 94–CV–5744.

and fifty thousand dollar ($750,000.00) payment to Appellants.

¶ 6 On November 12, 1997, Appellee filed the instant Complaint. In December, 1997, CWDC received the settlement check and deposited it into its checking account. Although demand had been made, Appellants failed to remit payment of the amount due, despite receipt of funds from the litigation with the NJEDA and Coopers Ferry Development Association.

¶ 7 Appellee fulfilled its obligation under the contract by performing the requested engineering services and obtaining the necessary Waterfront Development and Stream Encroachment permits for Appellants' development project.

¶ 8 After a non-jury trial, the trial court found in favor of Appellee and awarded the remaining amount due under the agreement, totaling seventy five thousand six hundred and twenty dollars ($75,620.00), plus interest in the amount of twenty six thousand four hundred and sixty seven dollars ($26,467.00) through September 30, 1998, accruing at the legal rate of 6%, and in the amount of three hundred and seventy-eight dollars and ten cents ($378.10) per month from October 1, 1998 until paid. After a denial of post-trial motions, this appeal followed.

¶ 9 Appellants claim that this action was barred by the statute of limitations and, in any event, the "corporate shield" of Appellants should not have been pierced.

¶ 10 Appellants' first claim is that Appellee's action was barred by the applicable statute of limitations. 42 Pa.C.S.A. § 5527 provides: "Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced *within six years.*" (emphasis added).

¶ 11 The statute of limitations begins to run on a claim from the time the cause of action accrues. *See Packer Society Hill Travel Agency, Inc. v. Presbyterian University of Pennsylvania Medical Center*, 430 Pa.Super. 625, 635 A.2d 649 (1993). In general, an action based on contract accrues at the time of breach. *Id.* When the contract is continuing, the statute of limitations runs from the time when the breach occurs or when the contract is in some way terminated. *Thorpe v. Schoenbrun*, 202 Pa.Super. 375, 195 A.2d 870, 872 (1963). Additionally, the "acknowledgement doctrine" provides that a statute of limitations may be tolled or its bar removed by a promise to pay the debt. *See Huntingdon Finance Corp. v. Newtown Artesian Water Company*, 442 Pa.Super. 406, 659 A.2d 1052, 1054 (1995).[5] As a result, Appellee's cause of action accrued either when Appellant breached the express or implied agreement to pay or when the parties severed their relationship.

¶ 12 During the period from November, 1989 through March, 1991, Appellee performed professional engineering services such as pursuing required applications, requisite approvals, and permits at the direction and on behalf of defendants for the waterfront development project. During this period, Appellee and Appel-

---

5. This Court has opined:
   There must, however, be no uncertainty either in the acknowledgement or in the identification of the debt; and the acknowledgement must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise.
   *Gurenlian v. Gurenlian*, 407 Pa.Super. 102, 595 A.2d 145, 151 (1991) (*quoting Maniatakis' Estate*, 258 Pa. 11, 101 A. 920 (1917)). A clear, distinct, and unequivocal acknowledgement of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. *Id.*

lants orally modified their agreement on various occasions.

¶ 13 The record indicates the following: Appellants were billed regularly for services provided by Appellee pursuant to the agreement between the parties. Between November 24, 1989 and March 29, 1991, Appellee issued twenty (20) bills to Appellants, and an unpaid balance was consistently carried by Appellee. The Waterfront Development and Stream Encroachment Permits, needed by Appellants for the hotel/conference center development project, were obtained by Appellee in March, 1991 from the NJDEP. In a letter dated March 13, 1991, from Appellee to Malcolm Lazin, Appellee forwarded to NJDEP the Waterfront Development and Stream Encroachment Permits for the hotel/conference center and summarized its invoicing status by stating the account balance and requesting payment on the outstanding invoices which totaled $75,620.21.

¶ 14 In a letter dated March 22, 1991, from Malcolm Lazin to Appellee, Malcolm Lazin, on behalf of Appellants, acknowledged the March 13, 1991 letter and stated that payment of the outstanding amount of the invoices would be made upon receipt by Appellants of funds when financing for the project was completed. This proposal was accepted by Appellee thereby modifying the payment term of the contract to the time of receipt of funds at the financial closing which was then contemplated by Appellants.

¶ 15 In reliance on Appellants' statement regarding payment, Appellee agreed to wait until Appellants received funds from payment on the account. In fact, Appellants attached a copy of Appellee's letter of March 13, 1991, to its Complaint in its federal action which listed the debt owed to Appellants. Moreover, on April 19, 1997, Appellants included a copy of Appellants' letter, dated March 13, 1991, in its Pre–Trial Order, Exhibit List, and again acknowledged the debt owed to Appellants.

¶ 16 Although Appellee demanded payment, Appellants have failed to remit payment of the amount due despite receipt of funds from the litigation with NJEDA and Cooper's Ferry Development Association. As such, under the "acknowledgment doctrine," it is clear that Appellants promised to pay its debt to Appellee, and Appellee relied on such. Therefore, Appellee was not on notice of any breach of this promise until Appellants denied payment after receiving money from its settlement with NJEDA and Cooper's Ferry. Thus, Appellee's claim was not barred by the statute of limitations.

¶ 17 Appellants also claim that the trial court erred in "piercing the corporate shield" in this action. There is a strong presumption in Pennsylvania against piercing the corporate veil. *Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 41–43, 669 A.2d 893, 895 (1995) (*citing Wedner v. Unemployment Compensation Bd. of Review*, 449 Pa. 460, 464, 296 A.2d 792, 794 (1972)).

> When making the determination of whether to pierce the corporate veil, the court "must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual, circumstances call for an exception." *Id.* "Care should be taken on all occasions to avoid making 'the entire theory of corporate entity . . . useless.'" *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir.1967) (*quoting Gagnon v. Speback*, 389 Pa. 17, 21, 131 A.2d 619, 621 (1957) and *Price Bar Inc., Liquor License Case*, 203 Pa.Super. 481, 484, 201 A.2d 221, 222 (1964)).

*Miners, Inc. v. Alpine Equipment Corp.*, 722 A.2d 691, 694–695 (Pa.Super.1998).

¶ 18 The trial court applied the alter ego theory of piercing the corporate veil, a theory which applies where the individual or corporate owner controls the corporation to be pierced, and the controlling owner is to be held liable. *Miners, Inc.*,

*supra*, (*citing*, *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503 (3d Cir.1994)).

¶ 19 Herein, the contract was executed by Malcolm Lazin as president of the Managing General Partner, CWDC, on behalf of CHDA. Appellants are referred to collectively because they are essentially alter egos of one another. CHDA is a general partnership, with CWDC as the controlling partner while Malcolm Lazin is the sole shareholder and sole officer of CWDC. CHDA operated under no formal partnership agreement at any time and CWDC is a corporation in which Malcolm Lazin is the sole shareholder, officer, and employee. In fact, some payments made to Appellee for work performed pursuant to the subject contract were tendered by personal checks, drawn on the personal account of Malcolm Lazin.

¶ 20 In sum, the trial court did not err in finding that Malcolm Lazin was, in fact, the alter ego of CWDC. Thus, Appellants' corporate veil was properly pierced and, as such Appellants' claim fails.

¶ 21 Based on the forgoing, we affirm the decision of the trial court.

¶ 22 Affirmed.