

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2004

# Holmes v. Smith

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1171

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Holmes v. Smith" (2004). *2004 Decisions.* Paper 824.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/824

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1171

CLARENCE HOLMES,

Appellant

v.

WILLARD SMITH, JR., a/k/a WILL SMITH; WILL SMITH ENTERPRISES;
JEFFREY TOWNES; A TOUCH OF JAZZ, INC; WILLESEN MUSIC INC,
a/k/a ZOMBA SONGS, INC; ZOMBA RECORDING CORP, t/a JIVE
RECORDS; ZOMBA PRODUCTIONS, LTD

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 99-cv-04932)
District Judge: Honorable Louis H. Pollak

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2004

Before: ROTH, AMBRO, and CHERTOFF, Circuit Judges

(Filed April 16, 2004 )

OPINION

Ambro, Circuit Judge

Clarence Holmes appeals the District Court's summary judgment in favor of

Willard Smith, Jr., a/k/a Will Smith.  Holmes sued Smith for breach of contract and

*quantum meruit* based on an alleged recording contract between them. The District Court held that Holmes's claims were barred by the statute of limitations. Holmes on appeal argues that his *quantum meruit* claim is not time barred because the statute of limitations should be tolled. For the reasons that follow, we disagree and affirm the decision of the District Court.

## I.

Sometime before 1986, Smith and Jeffrey Townes[1] formed a musical group called "DJ Jazzy Jeff and the Fresh Prince" (Smith as the Fresh Prince and Townes as DJ Jazzy Jeff). Holmes performed with the group for a few years under the pseudonym "Ready Rock C."

On July 26, 1986, Smith and Townes together signed a record agreement with a recording company, Word-Up Records Enterprises, Inc. ("Word-Up").[2] Then, Holmes claims, on an unspecified day in September of the same year, Smith and Holmes were walking in Philadelphia toward the home of Dana Goodman, Chief Executive Officer of Word-Up, when Smith promised Holmes that he would be an equal member of the group. Holmes asserts that, based on this oral contract,[3] they executed an "addendum"[4]

---

[1]Holmes initially named Townes as a co-defendant but later voluntarily dismissed the claims against him with prejudice.

[2]Because Smith then was a minor, his father Willard Smith, Sr. also signed the agreement as his legal guardian.

[3]The District Court noted that, even if Holmes's allegations were taken to be true, the conversation would not constitute an enforceable contract because Smith was a minor at

to the July recording agreement for the purpose of giving Holmes a one-third share of the group's future income. The purported addendum states that "Holmes is to be signed to Word Up Record Co.," and that "[t]he Word Up Record [C]ompany will make the same provisions for Clarence Holmes as with Jazzy Jeff and Fresh Prince." The document, however, does not refer to the July agreement. Nor does it grant a one-third share of the group's profits to Holmes. Neither Smith nor Townes signed this document.[5]

In 1990 Holmes stopped performing with DJ Jazzy Jeff and the Fresh Prince. When Smith and Holmes saw each other again in an auto shop in Philadelphia in 1992, Holmes asked Smith about the payment that was owed to Holmes. Smith denied that he owed any money to Holmes.[6]

Holmes experienced financial difficulties throughout the 1990s. When they saw each other again in 1997, Holmes told Smith that he was facing eviction and having trouble supporting his family. Holmes also claims that Smith acknowledged his debt owed to Holmes during this conversation. Thereafter, between 1997 and 1998, Smith wrote several checks to Holmes totaling $26,000. Holmes claims that Smith was paying

_____

that time.

[4]The document Holmes presents as the addendum is a one-page, undated, hand-written piece of paper. We note that the document is not named as an addendum (or anything) and the name of the company is misspelled.

[5]It was signed by Goodman and Holmes.

[6]Holmes alleges that Smith said to him, "[y]ou are gonna have to sue me." Smith claims that he only told Holmes that he did not think that he owed any money.

3

his debt while Smith counters that the payments were gifts.

On October 5, 1999, Holmes brought a suit against Smith in the District Court for breach of contract and *quantum meruit*.[7] In August 2002 Holmes moved for summary judgment on his contract claim. On the same day Smith also filed a motion for summary judgment on both of Holmes's claims. On December 20, 2002, the District Court granted Smith's summary judgment motion and denied Holmes's motion by finding that the statute of limitations had run for Holmes's claims. Holmes appeals all but the summary judgment on his breach of contract claim.[8]

## II.

### *A.*

Holmes first argues that the District Court erroneously dismissed his *quantum meruit* claim because the reasons the District Court provided for its judgment only pertained to his contract claim. We disagree.

Under Pennsylvania law,[9] the statute of limitations for a *quantum meruit* action is

---

[7]Holmes initially also named as defendants Will Smith Enterprises, Inc., Townes, A Touch of Jazz, Inc., Zomba Productions and its related entities. Holmes's claims against them, including copyright claims, were later dismissed. (As stated in note 1, Holmes's claims against Townes were dismissed with prejudice. We presume that the other claims were also dismissed with prejudice, thought we cannot find evidence in the record.)

[8]We have jurisdiction under 28 U.S.C. § 1291.

[9]Because this case is based on diversity of citizenship, we apply the substantive law of Pennsylvania. *See Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 552 (3d Cir. 1985) ("Federal Courts sitting in diversity cases must apply the substantive law of the states in which they sit and statutes of limitations are considered substantive.")

four years. 42 Pa. Cons. Stat. § 5525(a)(4). In supporting his summary judgment motion below, Smith argued that the limitations period for Holmes's *quantum meruit* claim had expired because the relationship between Smith and Holmes was terminated more than four years before Holmes filed a suit in 1999. *See Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. Ct. 1997) ("[Q]uantum meruit actions begin to accrue as of the date on which the relationship between the parties is terminated.") (citing *Kenis v. Perini Corp.*, 682 A.2d 845, 849 (Pa. Super. Ct. 1996) (holding that attorney's *quantum meruit* cause of action against his former client accrued as of the date of the attorney's termination of representation)).

The record shows that, in his response to Smith's summary judgment motion, Holmes did not dispute the actual expiration of the time to file his *quantum meruit* action.[10] Instead, he argued that his cause of action was revived when Smith "acknowledged" his debt in 1997-98 by making payments to Holmes. *See United States v. Hemmons*, 774 F. Supp. 346, 351 (E.D. Pa. 1991) ("Under Pennsylvania law, when . . . a loan payment serves as an acknowledgment of the total outstanding debt, the statute of limitations re-commences running with each payment.") (citation omitted). During oral argument before the District Court, Holmes again focused on this acknowledgment theory and did not dispute the actual expiration of the statute of limitations. He did so even

---

[10]On appeal, the parties agree that the year Holmes stopped performing with Smith was 1990, nine years before Holmes brought this suit against Smith.

though he now concedes that both his contract and *quantum meruit* claims were properly before the District Court during the oral argument.

The District Court sufficiently dealt with the acknowledgment doctrine and provided the reasons for refusing to apply it to this case. The Court correctly pointed out that Holmes must show clear and unequivocal acknowledgment of the debt to prevail. *See Huntingdon Finance Corp. v. Newtown Artesian Water Co.*, 659 A.2d 1052, 1054 (Pa. Super. Ct. 1995) ("There must . . . be no uncertainty either in the acknowledgment or in the identification of the debt; and the acknowledgment must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time."). After detailed discussion of the law and the facts, the District Court found that the several payments Smith made to Holmes between 1997 and 1998, each or in aggregate, did not satisfy the precision called for by *Huntingdon.* Thus, we conclude that the District Court provided a sufficient basis for entering summary judgment against Holmes on his *quantum meruit* claim.

### B.

Holmes alternatively argues that the statute of limitations for his *quantum meruit* claim should be tolled because his alleged contract with Smith was a "continuing one."[11]

---

[11] In support of this assertion, Holmes maintains that contracts in the music industry are generally ongoing and continuous. Thus, he claims that the contract itself was never terminated even though he stopped performing with the group.

This issue was not argued in the District Court. As such, "[i]t is well established that failure to raise an issue in the district court constitutes a waiver of the argument." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 105 (3d Cir. 1999). Moreover, this case does not present an extraordinary circumstance warranting the review of an issue for the first time on appeal. Although Pennsylvania law recognizes an alternative date from which the statute of limitations runs when a continuing contract is involved, this exception applies only to a plaintiff's contract cause of action (which Holmes is not appealing) and not to an action based on *quantum meruit*. *See S.T. Hudson Engineers, Inc. v. Camden Hotel Dev. Assocs.*, 747 A.2d 931, 934 (Pa. Super. Ct. 2000); *Cole v. Lawrence*, 701 A.2d at 989.

\* \* \* \* \* \*

Accordingly, we affirm the District Court's summary judgment.