**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-2229 and 13-2100
_____

JOHN W. FINK,

Appellant in No. 12-2229

v.

EDGELINK, INC.;
KAYDON A. STANZIONE
_____

IN RE:  ADVANCED LOGIC SYSTEMS, INC.,

Debtor

v.

JOHN W. FINK,

Appellant in No. 13-2100
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Nos. 1-09-cv-05078 & 1-12-cv-04479)
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 6, 2013

Before:  GREENAWAY, JR., VANASKIE and ROTH, *Circuit Judges*

(Filed:  January 21, 2014)
_____

OPINION

_____

VANASKIE, *Circuit Judge.*

Before us are consolidated appeals from cases in which plaintiff-appellant John Fink attempts to recoup the benefits of a capital investment in Advanced Logic Systems, Inc. ("ALSI"), a now-defunct corporation which dissolved after filing for Chapter 7 bankruptcy in 2009. In Case No. 12-2229, Fink is suing EdgeLink, Inc., a company which he claims is a "mere continuation" of ALSI and thus responsible for ALSI's financial obligations to him. He also seeks relief from Kaydon Stanzione, the founder of both EdgeLink and ALSI. Fink appeals from the District Court's order granting summary judgment against him. In Case No. 13-2100, Fink seeks to reopen the ALSI bankruptcy on the theory that ALSI concealed assets from the trustee. He appeals from the District Court's order affirming the Bankruptcy Court's denial of his request to reopen. In both cases, we will affirm.

## I.

We write primarily for the parties, who are familiar with the somewhat convoluted facts and procedural history of these cases. Accordingly, we set forth only those details necessary to our analysis.

In December 2000, Fink began working as a financial consultant for ALSI, a networking and telecommunications company founded by defendant Kaydon Stanzione. Through its website, ALSI offered the commercial use of "proprietary" communications technology with distinctive trademarks such as the "Alert Notification and Incident

Command System (ANICS)," the "WorkQuick Campaign Manager," and something known simply as "Trinity." Prominent ALSI customers of record included the United States Coast Guard, Verizon, Sunoco, ADT Security Services, Inc., and Holt Logistics, Inc.

In 2001, Fink entered into a series of secured credit agreements with ALSI to loan approximately $830,000 in working capital to the company in return for stock purchasing options detailed in a "warrant agreement." Over the next three years, however, the financial condition of ALSI deteriorated. In March 2003, Fink filed suit against ALSI and Stanzione in New Jersey Superior Court, claiming breaches of the aforementioned credit agreements, as well as fraud. Fink claims that as of December 31, 2003, Stanzione had wrongfully granted over $125,000 in personal loans to himself from ALSI's coffers.

Fink contends that beginning in 2005, during the pendency of the state court litigation, Stanzione began a course of corporate maneuvering that resulted in the theft or fraudulent transfer of valuable ALSI assets, including existing contracts and intellectual property. That year, a company called Advanced Logic Services, Inc. ("ALServ") was incorporated in Nevada, with Stanzione's 85-year-old mother listed as the sole owner and officer. ALSI's accountant, Joseph Troupe, characterized ALServ as a pass-through entity created as a separate investment vehicle for potential business partners concerned with Fink's lawsuit against ALSI.

In 2007, the parties settled portions of the state court litigation, with ALSI agreeing to pay Fink roughly $1,000,000. In October 2008, however, having paid only about $524,000 to Fink, and with some of Fink's state court claims still pending, ALSI

3

filed for Chapter 11 bankruptcy. Fink was listed as a secured creditor on ALSI's bankruptcy petition.

In January 2009, during the course of ALSI's bankruptcy proceeding, Stanzione founded the defendant company EdgeLink, Inc., a New Jersey corporation with the same listed business address as ALSI and ALServ. Gregory Cucchi, a former ALSI executive, was named EdgeLink's Chief Executive Officer, and Troupe, ALSI's former accountant, became EdgeLink's Chief Financial Officer. EdgeLink hired Stanzione as a consultant.

Fink bases most of his claims in both cases before us on the contention that EdgeLink was the recipient of valuable ALSI technology and customer relationships. He offers a May 2009 capture of a website, http://www.edgelinkinc.com, which describes a variety of "proprietary" telecommunications offerings from EdgeLink that are extremely similar to ALSI's former descriptions of its own trademarked products. Fink also points to the resume of a person named Michael Fisher, which states that Fisher did consulting work for "EdgeLink (formerly ALSI)." And Fink notes that even after ALSI had filed for bankruptcy, Stanzione continued to offer ALSI's products and services to certain clients, except that he did so while operating under the auspices of ALServ or EdgeLink. From the summer of 2007 to the summer of 2009, for instance, ALSI provided the ANICS system to a company known alternately as Holt Logistics, Inc. and Greenwich Terminal LLC. In June 2009, Stanzione told a Holt employee that he was switching companies to EdgeLink, Inc., and that Holt would have to sign a new contract to continue receiving services similar to what ALSI had offered. Holt ultimately declined to sign the new

4

contract, which offered 12 months of service for $1250, because of unacceptable service disruptions.

Defendants presented evidence to rebut Fink's assertion that EdgeLink owned or benefitted from ALSI's property and relationship. In affidavits, depositions, and answers to interrogatories, EdgeLink's principals describe a company that from its founding was a complete failure as a business venture. The company never sold, licensed, or leased any tangible or intangible assets, fell into debt almost immediately, and, as of March 2010, listed corporate assets consisting of only a single laptop computer. Gregory Cucchi testified at deposition that EdgeLink was primarily a research and development company, and that any product descriptions appearing on EdgeLink's purported website were merely draft language created by Stanzione for products under development. Cucchi stated by affidavit that EdgeLink was created to capitalize on "4G" technology that was not in existence during ALSI's operation, and as a result EdgeLink never received any asset or customer relationship from ALSI and never provided services to any former customer of ALSI. And further, defendants provided documents showing that at least some of the intellectual property used by ALSI was owned by either Stanzione or third parties, such that its use by EdgeLink would not have violated ALSI's rights in any event.

In March 2009, ALSI's bankruptcy was converted to Chapter 7. At the time of ALSI's final bankruptcy petition on April 7, 2009, after the company's financial situation had been investigated by the assigned trustee, ALSI's assets totaled $263,194, including $200,000 attributable to "patents, copyrights, and other intellectual property." On May 21, 2009, the trustee elected to abandon all ALSI assets, characterizing their value as

highly speculative. ALServ, Stanzione's other corporation, was dissolved on June 29, 2009. The ALSI bankruptcy proceeding was formally closed on August 13, 2009 with no distributions to creditors.

In October 2009, Fink filed what is now Case No. 12-2229 in District Court. He seeks relief from EdgeLink for breach of contract under both the warrant agreement of 2001 (for which Fink requests roughly $58 million in damages) and the settlement agreement of 2007 (for which Fink seeks $2.6 million in damages). Both of these arrangements, as detailed above, were entered into by Fink and ALSI—but not EdgeLink. Fink claims that EdgeLink is liable for these breaches because it is a successor in interest to, or a mere continuation of, ALSI. Fink also brings claims for unjust enrichment and statutory violations of New Jersey's Fraudulent Transfer Act, N.J. Stat. Ann. 25:2-25 *et seq*. Lastly, Fink claims that Stanzione breached the fiduciary duties he owed to Fink as a creditor of ALSI.

Between late 2009 and mid-2011, the parties engaged in extensive discovery and motion practice. During this time Fink retained several different attorneys and briefly represented himself. Defendants moved for summary judgment in June 2011, which the District Court granted in full in its order of March 27, 2012.

Also in March 2012, based on evidence obtained in discovery in our Case No. 12-2229, Fink filed what is now before us as Case No. 13-2100, in which he sought to reopen ALSI's bankruptcy to allow the trustee to investigate whether ALSI's principals had stolen, converted, or fraudulently transferred assets to ALServ, EdgeLink, or some other party. Fink predicates this claim in large part on a 2007 application submitted by

6

ALSI to the New Jersey Economic Development Authority (the "NJEDA application"), which lists possession of intellectual property associated with ANICS, WorkQuick, and Trinity. The application also describes contracts from 2006 and 2007 with "GE," the "US Coast Guard Sector Delaware Bay," "ADT," and "a major political party." Fink also relies on a January 2007 ALSI "private placement memorandum" which describes 44.6 million shares of outstanding ALSI stock valued at $1.30 per share, for a total of $58.5 million. He compares this to the 17.9 million shares of stock listed on the company's bankruptcy petition. Lastly, Fink cites the aforementioned evidence regarding ALSI's purported continuation of its business relationships even after filing for bankruptcy.

The Bankruptcy Court refused to reopen the ALSI estate for several reasons. It noted, among other things, that: 1) Fink had provided no evidence that the alleged NJEDA assets still existed in 2008, at the time of the bankruptcy; 2) Fink had provided no evidence that those assets were fraudulently transferred before, during, or after the bankruptcy; 3) the alleged assets, even if extant and recoverable, were of highly speculative value, such that there was no guarantee they would cover the administrative costs of reopening or recoup value for unsecured creditors; and 4) the trustee had been made aware of Fink's claims in 2009, before issuing his final report, and found the claims to be fruitless. In an order dated March 25, 2013, the District Court affirmed.

**II.**

7

In Case No. 12-2229, the first of the two matters in this consolidated appeal, the District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

Our review of a District Court's grant of summary judgment is plenary. *Klein v. Weidner*, 729 F.3d 280, 283 (3d Cir. 2013). A grant of summary judgment is appropriate where the movant establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established rule under New Jersey law is that successor corporations are legally distinct from their predecessors and do not assume any of the debts or liabilities of the prior entity. *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 340 (1981). There are, however, four recognized exceptions: where (1) the purchasing corporation expressly or impliedly agreed to assume such debts and liabilities; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape responsibility for such debts and liabilities. *Id.* at 340–41. Here, Fink claims that EdgeLink is a "mere continuation" of ALSI.

We have previously summarized New Jersey law pertaining to the "mere continuation" rule as follows:

> Factors relevant to the "mere continuation" exception include continuity of ownership; continuity of management; continuity of personnel; continuity of physical location, assets and general business operations; and cessation of the prior business shortly after the new entity is formed. Also relevant is the extent to which the successor intended "to incorporate [the predecessor] into its system with as much the same

8

structure and operation as possible." Thus the court should determine whether "the purchaser holds itself out to the world as the effective continuation of the seller."

*Marshak v. Treadwell*, 595 F.3d 478, 490 (3d Cir. 2009) (quoting *Bowen Engineering v. Estate of Reeve*, 799 F. Supp. 467, 487–88 (D.N.J. 1992)). Put differently, continuity exists where the successor becomes merely a "new hat" for the predecessor. *Woodrick v. Jack J. Burke Real Estate, Inc.*, 306 N.J. Super. 61, 74 (N.J. Super. Ct. App. Div. 1997).

In its well-reasoned analysis, the District Court concluded that Fink's evidence, even when viewed in the most favorable light, would not allow a jury to conclude that EdgeLink was a mere continuation of ALSI. Because Fink's claims of unjust enrichment and fraudulent transfer were also predicated upon the theory that ALSI directly or indirectly transferred assets to EdgeLink, the Court granted summary judgment on each of Fink's counts against EdgeLink.[1]

Fink acknowledges that he has no direct evidence of a transfer of assets such as cash, physical property, intellectual property, or confidential client lists. The parties dispute whether, under New Jersey law, a plaintiff must prove a transfer of assets as an essential element for the imposition of successor liability. *Compare Ramirez*, 86 N.J. at 340–41 (discussing successor liability in terms of the "purchasing corporation" and the "seller"), *and Parsons Mfg. Co. v. Hamilton Ice Mfg. Co.*, 78 N.J.L. 309, 312 (N.J. 1909)

---

[1] Fink claims that the District Court contradicted itself with the following sentence: "When, however, there [is] no transfer of assets from one company to another, it is no longer a concern that the company shifted assets to avoid liability." App. at 20. Fink regards the District Court as having found that a "shift of assets to avoid liability" may have occurred, but is irrelevant in the absence of a transfer. We think the better reading is that in the absence of a transfer, the Court no longer needed to worry about a shift of assets to avoid liability, because one rules out the other.

(stating that a corporation "having taken over the assets of the former company for the purpose of carrying on its business, without apparent change in the personnel of the concern, is liable for the payment of the debts of the former concern"), *with Marshak*, 595 F.3d at 490 (arguably considering transfer of assets as only one factor among many). We need not reach that question because we conclude that whether a transfer is a formal prerequisite for successor liability or merely one important factor among several, the record before us would not permit a rational factfinder to conclude that EdgeLink is a mere continuation of ALSI.

Fink urges the imposition of successor liability based on the following facts: 1) continuity in personnel; 2) continuity in physical location; 3) the 2007 NJEDA application of ALSI detailing certain intellectual property holdings and describing purported contracts from 2006 and 2007; 4) the aforementioned EdgeLink website bearing "customer testimonials" and technological offerings nearly identical to those of ALSI; 5) the resume of a former employee which asserts that he performed consulting work for "EdgeLink (formerly ALSI);" and 6) Stanzione's apparent offerings of ALSI's trademarked products and services even after the formal transition from ALSI to ALServ and EdgeLink.

Taken in a vacuum, some of these facts raise at least a question as to the relationship between ALSI and EdgeLink. But discovery in this case has closed and we review the facts against a more developed record. The evidence now includes a reckoning of the corporate histories and holdings of ALSI, ALServ, and EdgeLink. It

10

further incorporates the results of ALSI's bankruptcy proceeding, along with interrogatories, affidavits, and deposition testimony from most of the relevant witnesses.

Crucially, we discern no evidence, from any of these myriad sources, of a benefit to EdgeLink that is even arguably attributable to ALSI's intellectual property. Despite Fink's repeated claims that some measure of such property was stolen, converted, or otherwise wrongfully transferred away from ALSI and into the possession of EdgeLink, he provides no evidence at all of patent filings, technological blueprints, or anything else substantive in this regard.[2] Instead he points only to vague references made on websites and in email exchanges to generic communications-related technology. Nor does Fink offer any basis for the purportedly significant value of this property. The bankruptcy trustee characterized the value of ALSI's intellectual property as "highly speculative" and ultimately worthless to the estate. And even if EdgeLink was at some time the beneficiary of valuable property, as of 2010, the company boasted a starkly negative cash flow, no apparent income attributable to intellectual property, and minimal corporate assets.[3]

The record also fails to reveal a continuity of operations or transfer of confidential customer lists between the two companies. Fink provides no specific evidence that even

---

[2] Indeed, the only hard evidence of intellectual property rights in the record consists of the contracts by which ALSI leased or was assigned such rights from Stanzione or third parties.

[3] At best Edgelink stood to gain a single payment of $1250 if Holt had transferred its business from ALSI to EdgeLink (which it did not). That transaction, even if consummated, would hardly provide an equitable basis for exposing EdgeLink to Fink's claims against ALSI for over $60 million.

a single customer in fact signed contracts with or made payments to both companies.[4] EdgeLink's principals instead offer uncontroverted testimony that the company was a total failure, and that its principal hope was in research and development of technology unrelated to ALSI's that simply never materialized. Nothing in the "diligent inquiry" performed by the bankruptcy trustee contradicts these claims.

In sum, we see no basis for the imposition of successor liability on these facts. There is no view of the record under which EdgeLink obtained benefits from ALSI such that it should also be held responsible for that company's liabilities.

Fink also seeks relief directly from Stanzione. In his complaint he alleges that Stanzione breached a fiduciary duty to Fink as a creditor of ALSI by transferring ALSI's assets without fair compensation and by failing to repay personal loans from the company in excess of $125,000. But for the reasons described above, we conclude that Fink has not submitted evidence that would allow a jury to find a transfer of valuable assets from ALSI. And Fink directs us to no evidence detailing personal loans from ALSI to Stanzione.

Fink has failed to offer specific facts that would allow a jury to return a verdict in his favor. Accordingly, we will affirm the District Court's order of March 27, 2012 insofar as it grants summary judgment in favor of EdgeLink and Stanzione on all claims.

**III.**

---

[4] We attribute scant probative value to the "customer testimonials" on EdgeLink's website. Certainly they do not allow the inference that EdgeLink in fact administered services or sold products to any particular ALSI customer.

12

Fink also appeals the District Court's decision affirming the Bankruptcy Court's denial of Fink's motion to reopen ALSI's bankruptcy. The District Court had jurisdiction over the matter under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. § 158(d)(1). We review a bankruptcy court's decision whether to reopen a case pursuant to 11 U.S.C. § 350(b) for abuse of discretion. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997).

Generally speaking, a bankruptcy court "should not be expected to reopen a closed proceeding after the parties have had the normal opportunities to present evidence absent a special reason for permitting reopening." *In re Time Sales Fin. Corp.*, 474 F.2d 1197, 1201 (3d Cir. 1971). The belated discovery of undisclosed pre-petition assets, however, may provide good reason to reopen a bankruptcy case. *In re Atanasov*, 221 B.R. 113, 116 (D.N.J. 1998). As noted by the United States Bankruptcy Appellate Panel of the Ninth Circuit, the inquiry requires a balancing of the costs of such reopening with the expected benefits:

> In order for the denial of a motion to reopen to constitute an abuse of discretion, assets of such probability, administrability and substance must appear to exist as to make it unreasonable under all the circumstances for the court not to deal with them. Where the chance of any substantial recovery for creditors appears too remote to make the effort worth the risk, a trial court does not abuse its discretion in denying a motion to reopen.

*In re Herzig*, 96 B.R. 264, 266 (B.A.P. 9th Cir. 1989) (internal citations and quotation marks omitted).

Here, Fink offers the 2007 NJEDA application of ALSI detailing certain intellectual property holdings and describing purported contracts from 2006 and 2007. He also relies on the 2007 ALSI "private placement memorandum" listing more outstanding shares of stock than the company disclosed on its bankruptcy petition, and on emails in which ALSI appeared to continue rendering services to its customers even after filing for bankruptcy.

ALSI's estate was scrutinized by the trustee in 2008 and 2009. The trustee found no evidence of any asset transfers by ALSI during or prior to its bankruptcy filing made for the purposes of defrauding its creditors. Nor did the trustee find that any other corporation, such as ALServ or EdgeLink, had agreed to assume any of ALSI's debts or obligations such that additional funds would be recoverable.

Our independent review of the record accords with the trustee's findings. Fink's claims of hidden assets predicated upon the NJEDA application and the stock offering are entirely speculative and offer little hope of additional recovery for the estate. Given that the company was essentially valueless at the time of its bankruptcy, resulting in no distribution to creditors whatsoever, we fail to see how the recovery of purported "missing stock" for a now-defunct corporation could benefit any party. And there is no evidence that ALSI's limited business dealings in the waning days of its bankruptcy filing were unknown to the trustee or that they resulted in substantial undisclosed income. We conclude that the Bankruptcy Court did not abuse its discretion in declining to reopen ALSI's estate.

**IV.**

14

For the foregoing reasons, we will affirm the District Court's orders of March 28, 2012 and March 25, 2013.