**Sunlight Electrical Contracting Co. Inc. v. Turchi**

---

11. 3/5/14 Ashley Super brief at 17.

*Bruce L. Phillips* and *Jeffrey C. Venzie*, for plaintiff.
*Bruce Bellingham*, for defendant.

MCINERNEY, *J.*, May 16, 2014—Plaintiff Sunlight Electrical Contracting Co., Inc. ("Sunlight") brought this fraud action to pierce the corporate veil of defendant 23S23 Construction Inc. ("23S23") to reach the assets of defendants John J. Turchi, Jr. ("Turchi") and Turchi

Inc. Sunlight's grievances arise out of a condominium construction project at 23 South 23rd Street in Philadelphia known as the Carriage House Condominium (the "Condominium"). The owner of the Condominium was Carriage House Condominiums L.P. ("CHC LP"), whose general partner was Carriage House Condominiums G.P. Turchi was the principal officer and owner of both the limited partnership and the general partnership, as well as of Turchi, Inc. and 23S23.

In 2005, 23S23, acting as Construction Manager for the Condominium project, entered into a subcontract with Sunlight pursuant to which Sunlight was to perform electrical work on the Condominium project. 23S23 allegedly paid Sunlight some of the money due under the subcontract, but failed to pay all of it and failed to pay for additional work requested of, and performed by, Sunlight, despite Turchi's repeated promises that payment would be made. Instead, Sunlight alleges, construction monies that should have been paid by 23S23 and CHC LP to Sunlight and other subcontractors went to Turchi, Turchi, Inc., and other related entities controlled by Turchi.

In 2009, Turchi caused 23S23 and CHC LP to file for bankruptcy. In 2010, CHC LP's plan of reorganization was confirmed and its debts discharged. 23S23 was found to have no assets and was liquidated. The debts owed by the bankrupt parties to Sunlight were listed on their schedule of liabilities. However, the veil piercing claims asserted by Sunlight in this action apparently were not listed or treated as assets of either bankrupt entities' estate, even though an earlier iteration of Sunlight's claims was pending before a federal court at the time the bankruptcies were filed.[1]

---

1. That action was originally filed with this court as *Sunlight Electrical Contracting v. Turchi et al.*, May term, 2008, No. 03911, and was subsequently removed to federal court.

The money that Turchi and Turchi, Inc. allegedly siphoned off of, or failed to pay into, 23S23 and CHC LP may be recoverable through a claim to pierce 23S23's and CHC LP's corporate veils to reach Turchi and possibly Turchi, Inc. as well.[2] In addition to Sunlight, at least two other subcontractors who worked on the Condominium project, and who claim not to have been fully paid for their work, have attempted to bring veil piercing claims in state court.[3]

Such veil piercing claims against Turchi and Turchi, Inc. are potential assets of 23S23's and CHC, LP's bankrupt estates.[4] However, Sunlight and the other shorted subcontractors chose not to pursue such claims in bankruptcy court where they belong, nor to do so on behalf

---

2. *See e.g.*, *Lumax Indus., Inc. v. Aultman*, 543 Pa. 38, 42, 669 A.2d 893, 895 (1995) ("the factors to be considered in disregarding the corporate form [are] as follows: undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud."); *S.T. Hudson Engineers, Inc. v. Camden Hotel Dev. Associates*, 747 A.2d 931, 935 (Pa. Super. 2000) (the court recognized "the alter ego theory of piercing the corporate veil, a theory which applies where the individual or corporate owner controls the corporation to be pierced, and the controlling owner is to be held liable.")

3. *See BVF Construction Co., Inc. v. Turchi, Inc. et al*, October term, 2007, No. 02084 (Phila. Ct. Com. Pl.). The veil piercing claims in that action were recently dismissed by this court. *See also Morris Black & Sons, Inc. v. Turchi, Inc. et al.*, 2012 WL 1379499 (Lehigh Co. Ct. Com. Pl.) (the court dismissed a claim for piercing the corporate veil in connection with the Carriage House Condominiums).

4. *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 705 (2d Cir. 1989)("because an alter ego claim is the property of the estate, and because the injury in this case is a generalized one... [creditor] does not have standing to assert its alter ego claim outside of the bankruptcy proceeding."); *Cedarbrook Plaza, Inc. v. Gottfried*, 1997 WL 330390 *10 (E.D. Pa. June 6, 1997) ("The court finds that [creditor's alter ego claim] presents a claim for generalized harm. The injury alleged is primarily to the corporation, and is injury to the plaintiff creditor only insofar as it decreases the assets of the corporation to which he must look for satisfaction of his debt. Thus, the suit is for a tort suffered by the corporation, and properly brought by the trustee. The claim is not personal to [creditor].")

of all similarly situated creditors. Instead, each subcontractor asserted individual claims seeking the repayment of the allegedly stolen sums directly and only to it.

The point of a bankruptcy proceeding is not to shield a swindler from the reach of those he duped. It is instead a chance for his victims to help the trustee locate the debtor's assets, so that they can be distributed fairly among all his creditors.[5] This court would undermine the federal bankruptcy scheme if it were to permit Sunlight's individual veil piercing claims to proceed here.[6] Instead, Sunlight's claims in this action must be dismissed without prejudice for them to be re-filed in re-opened bankruptcy proceedings involving 232S23 and CHC, L.P.[7]

## CONCLUSION

For all the foregoing reasons, defendants' motion for summary judgment must be granted and plaintiffs' claims

5. *See Union Bank v. Wolas*, 502 U.S. 151, 161, 112 S. Ct. 527, 533, 116 L. Ed. 2d 514 (1991) ("The purpose of the preference section is two-fold. First, by permitting the trustee to avoid pre-bankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.")

6. Allowing the claim to proceed would, in effect, elevate [Sunlight] to the status of a preferred creditor with rights superior to those of [23S23's and CHC LP's] other creditors." *Cedarbrook Plaza*, 1997 WL 330390 at *11.

7. *See* 11 U.S.C.A. § 350 ("A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."); *Fink v. EdgeLink, Inc.*, 2014 WL 211810 (3d Cir. Jan. 21, 2014) ("The belated discovery of undisclosed pre-petition assets...may provide good reason to reopen a bankruptcy case.")

must be dismissed.

## ORDER

And now, this 16th day of May, 2014, upon consideration of defendants' motion for summary judgment, the response thereto, and all other matters of record, and in accord with the opinion issued simultaneously, it is ordered that said motion is granted and all of plaintiff's claims against defendants are dismissed without prejudice to reassert them if permitted by the bankruptcy court.

