519 A.2d 1021

**Perry ECKSEL**

v.

**ORLEANS CONSTRUCTION COMPANY and Thomas Vesey t/a Thomas Construction Company, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1986.

Filed Jan. 13, 1987.

1. 23 P.S. § 401(d).

122

Andrew D. Bershad, Philadelphia, for appellants.

Jeffrey M. Chebot, Philadelphia, for appellee.

Before ROWLEY, KELLY and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the order and judgment entered in favor of appellee and against appellants in the amount of $52,100.00. Appellants contend that the trial court erred in (1) *sua sponte* ordering a new trial on the issue of damages, (2) failing to find that appellee had released appellants from liability, (3) concluding that appellants had breached implied warranties, (4) permitting appellee to amend his complaint after completion of the trial, (5) causing delays which prejudiced appellant, (6) failing to consider appellee's duty to mitigate damages, (7) rejecting appellants' evidence as to the market value and costs of repair of the house, (8) awarding an excessive amount of damages. We disagree and, accordingly, affirm the lower court's order and judgment.

Appellee filed this action in assumpsit in 1972, alleging that appellants had defectively constructed his house. In 1970, appellee entered into an agreement of sale in which he

agreed to buy an as yet unconstructed house from appellants, Orleans Construction Company and Thomas Vesey, its builders and vendors, for $41,000.00. Prior to settlement, appellee discovered water in the basement of the home and was assured by appellants that they would correct the problem. *See* Trial Court Opinion, June 11, 1984 at 1. Despite this assurance, the basement continued to flood and water collected in the house's lawn and driveway. *See* Lower Court Opinion, March 14, 1986 at 2. Appellants told appellee that regarding the property might cure the problem and, in accordance with that diagnosis, dumped two piles of dirt on appellee's lawn. However, the regrading was never performed and appellee had to have the piles of dirt removed. *Id.* On April 7, 1983, the parties entered into an agreement that appellants would complete an agreed-upon list of repairs to the house, including repair of the basement, and, in return, appellee would relinquish his legal claims against appellants. Appellants failed to complete all of the repairs, and those that they did complete were not performed in a reasonably workmanlike manner. *Id.* at 3.

Trial was held on June 8, 1983. The lower court, sitting without a jury, held that appellants were liable to appellee for the defects that created the wet basement problem. *Id.* at 8. The court also found, however, that it did not have sufficient information to determine damages pursuant to the formula then recently announced in *Gadbois v. Leb-Co. Builders, Inc.*, 312 Pa.Superior Ct. 144, 458 A.2d 555 (1983) and *sua sponte* ordered a new trial limited to the issue of damages. *Id.* at 11–12. Appellants filed timely post-trial motions, but the lower court did not rule on those motions until the new trial was completed. That trial occurred on May 1, 1984. In an opinion dated June 11, 1984, the trial court entered judgment in favor of appellees and against appellants in the amount of $52,100.00. Appellants timely filed further post-verdict motions. On April 23, 1985, the lower court denied all of appellants' post-verdict motions, and this appeal followed.

Appellants first contend that the trial court abused its discretion in *sua sponte* ordering a new trial limited to the issue of damages. Appellants argue that as the court specifically found that appellee had not offered sufficient evidence to determine damages, judgment should have been entered against appellee. We disagree.

 The granting of a new trial is within the sound discretion of the trial court, and a decision to do so will not be reversed on appeal absent a showing that the trial court committed an error of law or palpably abused its discretion. *See Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 289, 265 A.2d 516, 517 (1970); *George I. Reitz & Sons, Inc. v. Donise Enterprise, Inc.*, 319 Pa.Superior Ct. 76, 81, 465 A.2d 1060, 1063 (1983). A trial court may, in its discretion, order a separate trial on a separate issue in a cause of action in furtherance of convenience or to avoid prejudice. *See* Pa.R.Civ.P. 213(b). *See also Schaefer v. American States Insurance Co.*, 272 Pa.Superior Ct. 67, 71, 414 A.2d 672, 673 (1979). Additionally, a trial court may grant a new trial on the issue of damages alone where the issue of liability has been fairly determined and the issue of damages is readily separable. *See Stokan v. Turnbull*, 480 Pa. 71, 75, 389 A.2d 90, 93 (1978); *Reid v. Oxendine*, 275 Pa.Superior Ct. 548, 556, 419 A.2d 36, 40 (1980).

██ Here, in order to "avoid speculation" the lower court ordered a new trial on damages after it had found against appellants on the issue of liability. *See* Lower Court Opinion, *supra* at 5. Contrary to appellants' assertion that the lower court found that appellee had failed to prove damages, the court instead found that neither party had supplied enough information to determine damages pursuant to the then recently announced formula in *Gadbois v. Leb-Co. Builders, Inc., supra*. *See* Lower Court Opinion, *supra* at 11. We believe that the lower court properly followed the procedure authorized under Pa.R.Civ.P. 213(b) and the above-mentioned case law concerning new trials limited to damages. We therefore find that the lower court did not commit an error of law or palpably abuse its discretion in

this regard. *See Burrell v. Philadelphia Electric Co.,* *supra.*

Appellants next contend that the lower court erred in finding that appellee had not released appellants from liability. Specifically, appellants argue that appellee signed two separate agreements that released them from liability arising out of any alleged defects in the construction of the house. The first agreement was allegedly contained in the agreement of sale, signed by appellee on November 19, 1970. The second agreement was allegedly entered into by appellee in April, 1973, subsequent to the filing of this suit and amounted to a settlement of the suit contingent upon the performance of certain enumerated repairs by appellants. Appellants contend that the lower court erred in disregarding these release agreements and finding against appellants on the issue of liability. We will address each of these alleged releases separately.

 Because of the special knowledge of the builder-vendor in a home construction situation, language purportedly creating an express restriction or exclusion of an implied warranty must be strictly construed against the builder-vendor. *See Tyus v. Resta,* 328 Pa.Superior Ct. 11, 19, 476 A.2d 427, 432 (1984) (citations omitted). Additionally, due to the important consumer interests protected by an implied warranty, any attempt to disclaim such a warranty must be clear and unambiguous. *Id.* The language must also be specific and particular to the legal rights the buyer is waiving and their relation to their effect on specifically designated potential latent defects. *Id.* Evidence that the parties actually negotiated the release will tend to indicate that the purchaser made a knowing waiver of his or her rights. *Id.*

The release language in the agreement of sale reads: After settlement is made and/or key is accepted and/or entry into possession of any part of the premises is made, Buyer agrees that no further claims or demands of any kind will be made upon Seller or Seller's principals, and Seller and Seller's principals shall not be liable for any

> and all injuries, loss, or damage to Buyer or any other
> person, or to premises, resulting from any cause whatso-
> ever, including but not [limited] to the exclusion of other
> causes not specifically recited herein, negligence and la-
> tent or undiscovered defects, and Buyer hereby releases
> and discharges Seller and Seller's principals from all
> liability for such injury, loss or damage.

*See* Agreement of Sale, November 11, 1970. The language in this release is broad and all-encompassing. It does not refer with specificity to what rights appellee was waiving or how they applied to particular latent defects. Additionally, there is no evidence that the release was negotiated by the parties. In fact, the release is found eleven paragraphs into what appears to be a boilerplate Agreement of Sale. We will not allow appellants to escape liability by relying on language of this nature.

▪ The second alleged release relied upon by appellants refers to a settlement agreement entered into by the parties in April of 1973. As the lower court correctly noted, appellants failed to fulfill the agreement and correct the defects in the house. *See* Lower Court Opinion, *supra* at 6. Therefore, as appellants did not perform their part of the agreement, appellee's promise to release them from liability is not enforceable.

Appellants next contend that the lower court erred in finding that they had breached the implied warranty of habitability. Specifically, appellants make three arguments in this regard.* First, they argue that the lower court was precluded from finding there was a breach of implied war-ranty because appellee based his claim on breach of con-tract. We disagree.

---

* Appellants' further argument that the lower court was precluded from finding that the implied warranty of habitability was breached be-cause that warranty was not in the express language of the agreement of sale can be summarily dismissed. The very nature of an implied warranty includes the notion that it is not found in express language, but rather inferred in law. *See Tyus v. Resta, supra* 328 Pa.Super. at 19, 476 A.2d at 433.

■ The implied warranty of habitability is a warranty based in a contract for the sale of a home. *See Tyus v. Resta, supra* 328 Pa.Super. at 19, 476 A.2d at 431. This implied warranty was first recognized in Pennsylvania in *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972). In *Elderkin* the Pennsylvania Supreme Court recognized that as warranties were rarely given in home construction contracts, and there was a wide disparity in knowledge between the buyer and the seller, a theory of implied warranties was necessary to safeguard the reasonable expectations of the buyer. The Court reasoned:

> [O]ne who purchases a development home ... justifiably relies upon the skill of the developer that the house will be a suitable living unit ... [T]he builder-vendor impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purposes intended—habitation.

*Id.,* 447 Pa. at 128–129, 288 A.2d at 776. Warranties of habitability and reasonable workmanship are not created by representations of the builder-vendor but rather are implied in law and as such exist independent of any representations of a builder-vendor. *See Tyus v. Resta, supra* 328 Pa.Super. at 19, 476 A.2d at 433. Appellants first contend that the court could not find that they had breached the implied warranties because appellee did not specifically argue such a breach. We disagree. Appellee argued breach of contract. Since the implied warranties are inherent in the contract, and appellee argued all of the facts necessary to find that they were indeed breached, his failure to couch his argument in the exact terms of implied warranties did not preclude the lower court from ruling upon that theory. Decisions as to the application of the law are within the domain of the trial court. *See General Electric Credit Corp. v. Aetna Casualty & Surety Co.,* 437 Pa. 463, 479–80, 263 A.2d 448, 457 (1970).

Appellants next argue that the concept of implied warranties was not recognized under Pennsylvania law when the

agreement of sale was entered into, and that it should not have been retroactively applied here. We disagree.

Appellate decisions are to be applied retroactively unless the court specifically states that a decision is to be applied prospectively only. *See Commonwealth v. Cabeza*, 503 Pa. 228, 233, 469 A.2d 146, 148 (1983). The *Elderkin* decision did not create the warranties of habitability and reasonable workmanship. Rather, it acknowledged their existence. *See Tyus v. Resta, supra* 328 Pa.Super. at 18, 476 A.2d at 431. *Elderkin* itself applied implied warranties to a 1963 agreement of sale. *See Elderkin v. Gaster, supra* 447 Pa. at 118, 288 A.2d at 771. Clearly, the lower court acted correctly in applying the implied warranties to this agreement of sale.

Appellants next argue that the lower court erred in finding that a leaky basement breached the warranty of habitability. We disagree. As the Lower Court noted:

A house is a shelter. The whole purpose of building shelter is to protect individuals and their property from the elements—wind, water, fire, earth, etc. A basement is part of the overall pursuit of this protection. The plaintiff proved that the basement cannot be used even for storage. A continually wet basement indicated the owner of the resident [sic] may not rely on a part of that residence to protect individuals from at least one of the elements—water. The purpose of building a house is undone by the defendants' improper construction created [sic] a premises unfit for human dwelling.

Lower Court Opinion, *supra* at 7. Additionally, there is precedent to uphold such a finding. In *Tyus v. Resta, supra* this Court upheld a lower court finding that a leaky crawlspace breached the warranty of habitability. We will not overturn the lower court's determination that the leaky basement in this case breached both the implied warranties of habitability and reasonable workmanship.

Appellants next contend that the trial court erred in permitting appellee to amend his complaint after the completion of the trial. We disagree.

A party may at any time, either with the consent of the opposing party or by leave of court, amend his or her pleading. *See* Pa.R.Civ.P. 1033. Permission to allow an amendment of the pleadings is within the sound discretion of the trial court and will not be reversed on appeal absent a showing of abuse of discretion. *See Gallo v. Yamaha Motor Corp. U.S.A.,* 335 Pa.Superior Ct. 311, 313, 484 A.2d 148, 150 (1984). A trial court may allow such an amendment to the pleadings while a motion for judgment on the pleadings is pending, after judgment, or after an award has been made or an appeal has been filed. *See Biglan v. Biglan,* 330 Pa.Superior Ct. 512, 521, 479 A.2d 1021, 1026 (1984). Such an amendment, however, must not be for a new cause of action or surprise or prejudice the opposing party. *See Robinson Protective Alarm Co. v. Bolger & Picker,* 337 Pa.Superior Ct. 503, 514, 487 A.2d 373, 378 (1985); *Cingota v. Milliken,* 286 Pa.Superior Ct. 117, 121, 428 A.2d 600, 602 (1981).

Here, appellee asked for damages in the amount of $20,000.00 in his original complaint filed in 1971. After the first trial in 1983, but before damages were awarded, the court granted leave to appellee to amend his complaint and increase his claim for damages to $52,100.00. The amendment did not allege a new cause of action, and was based on the same operative facts of the original action. Additionally, appellants cannot claim to have been surprised by the amendment as they admit that they had received notice of appellee's desire to increase his claim for damages nearly one year before appellee petitioned the court to allow the amendment. *See* Brief for Appellant at 20. Thus, the lower court did not err in permitting appellee to amend his complaint.

Appellants next contend that the trial court caused a number of delays which resulted in prejudice to the appellants. Specifically, they argue that appellee's eleven year

delay in prosecuting the case and the lower court's seven month delay between the first trial and its rendering of a verdict severely prejudiced their interests. We disagree.

Appellants' first argument, concerning the pre-trial delay, has been waived due to their failure to preserve it in either pre-trial or post-verdict motions. *See* Pa.R.Civ.P. 227(b) (grounds for post-trial relief must be raised, if available, in pre-trial proceedings or at trial). *See also DeSiato v. Shahboz,* 277 Pa.Superior Ct. 333, 336, 419 A.2d 798, 800 (1980) (party waives right to seek non pros when he indicates willingness to try the case on the merits notwithstanding delay).

Appellants also argue that a nine-month delay between the first trial and the lower court's decision that appellants were liable for the defective construction of the house was prejudicial. They base this allegation upon Pa.R.Civ.P. 1038(c) which provides that a trial court sitting without a jury "shall enter a decision within seven days except in protracted cases or cases of extraordinary complexity." Here, we believe that the parties' briefs, the lower court opinion, and the length of this opinion, amply demonstrate the complexity of the issues involved in this case. Accordingly, we find that this case fell within the exception to the seven day rule. We further note that the prejudicial effects that appellants allege occurred during the nine-month period, worsening of the water problem and an inability to account for changing market conditions, are not supported by the record. We therefore find this contention meritless.

The appellants next contend that the trial court erred in failing to consider that appellee did not mitigate the damages. We disagree. A party who suffers a loss has a duty to make a reasonable attempt to mitigate damages, but the burden is on the party who breaches the contract to show how further loss could have been avoided through the reasonable efforts of the injured party. *See Gadbois v. Leb-Co. Builders, Inc., supra* 312 Pa.Super. at 156–57, 458

A.2d at 561–62. However, an injured party is not obligated to mitigate damages when both he and the liable party had an equal opportunity to do so. *See Loyal Christian Benefit Association v. Bender,* 342 Pa.Superior Ct. 614, 620, 493 A.2d 760, 763 (1985).

Here, appellants make no argument as to how the appellee could have mitigated the damages. Additionally, the trial court found, and the record shows, that the problem existed when the house was constructed and that it was an on-going problem not a worsening one. *See* N.T. June 8, 1983 at 38–41, 52–55. Therefore, the condition could not have been made worse by an alleged inaction on the part of appellee.

 Appellants next contend that the trial court erred in rejecting its proferred evidence as to the cost of repair and market value of the house. Specifically, they contend that the trial court should have accepted the testimony of their experts over that of appellees, and credited their evidence that they had made a firm offer to purchase the house to establish its market value. We disagree. The findings of a trial judge sitting without a jury carry the same weight as a jury verdict, and this court will not disturb those findings on appeal absent an error of law or abuse of discretion. *See Pato v. Cernuska,* 342 Pa.Superior Ct. 609, 612, 493 A.2d 758, 759 (1985). We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence. *See Tyler v. King,* 344 Pa.Superior Ct. 78, 96, 496 A.2d 16, 25 (1985).

 Here, the trial court heard evidence from both parties concerning the relevant estimates of repairs and market value. The court decided to credit the evidence submitted by appellee. We will not disturb this finding on appeal. Additionally, appellants' offer to purchase the house, and its timing on the eve of the trial, is hardly credible evidence to prove market value of the house in light of the interest of

the party who made the offer. *See Redevelopment Authority v. Pelullo*, 48 Pa.Commonwealth Ct. 68, 74, 409 A.2d 122, 125 (1979) (such offers amount to settlement offers and are therefore not probative of value).

Appellants last contention is that the damages awarded by the trial court are excessive. Specifically, they maintain that as the house cost $40,965.00 when purchased in 1970, an award based on the cost of repair of $52,100.00 is clearly excessive. We disagree. We will not find a verdict excessive unless it is so grossly excessive so as to shock our sense of justice. *See Fretts v. Pavetti*, 282 Pa.Superior Ct. 166, 176, 422 A.2d 881, 885 (1980).

Here, the trial court followed the formula to determine damages set out by this Court in *Gadbois v. Leb-Co. Builders, Inc., supra.*

> [T]he measure of damages in cases where a homeowner sues for defective construction is the difference between the market value of the house as constructed and the market value that the house would have had if constructed as promised, with the qualification that if it is reasonably practical to cure the defects in construction by repairs, and if the cost of repairs does not exceed the difference in market value, then the measure of damages is the cost of repairs.

*Id.*, 312 Pa.Superior Ct. at 153, 458 A.2d at 557. The trial court found that the market value of the house as constructed was $50,000.00, and that the market value of the house if constructed properly was $100,000.00, leaving a difference of $50,000.00. *See* Lower Court Opinion, April 23, 1985 at 3, 4. The court also concluded that the cost to repair the house was $52,100.00. *Id.* at 5, 6. The court then noted that while the cost of repair slightly exceeded the difference in market values, the fact that appellee had established roots in the community and did not wish to relocate dictated that damages be awarded based upon the cost of repair. *Id.* (citing *Incollingo v. Ewing*, 444 Pa. 263, 308, 282 A.2d 206, 229 (1971) (fixed and formulated rules relating to the appropriate measure of damages must give

way when it is determined that they are not setting a compensatory standard)).

■ Appellants' argument that the award is out of proportion to the original cost of the house is without merit. Inflation and appreciation caused the market value of the house to rise, and even appellants offered evidence on market value that exceeded the original cost of the house. *See* Lower Court Opinion, April 23, 1985 at 3, 4. We will not find that this award, or the reasoning that compelled it, is so shocking so as to be overturned on appeal. Appellants conduct in constructing an obviously defective house, combined with their inadequate attempts at repair, provides ample justification for the verdict. The trial court's slight deviation from the *Gadbois* standard was designed to give appellee the benefit of his bargain—a habitable house.

For the above stated reasons, we therefore affirm the order and judgment of the lower court.

Affirmed.

ROWLEY, J., files a concurring statement.

ROWLEY, Judge concurring:

I agree with the majority that appellants should not be allowed to escape liability by relying on the release language contained in the agreement of sale. In my opinion, however, the language is not ambiguous. Rather, the fatal defect in the release is that it is buried in the middle of a standard form contract in the same print size and type as the rest of the contract.

As pointed out by the majority, the builder-vendor enjoys a superior bargaining position due to his special knowledge in the home construction situation. The implied warranties of habitability and reasonable workmanship extended to the builder-vendor by our Supreme Court in *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972), "were necessary to equalize the disparate positions of the builder-vendor and the average home purchaser by safe-guarding the reasonable expectations of the purchaser compelled to depend

**136** 

upon the builder-vendor's greater manufacturing and marketing expertise." *Tyus v. Resta,* 328 Pa.Super. 11, 19, 476 A.2d 427, 431 (1984).

Thus, I would hold that, for the protection of the consumer, any attempt to disclaim an implied warranty must not only be clear and unambiguous, but must be conspicuous. *See Herlihy v. Dunbar Builders Corp.,* 92 Ill.App.3d 310, 47 Ill.Dec. 911, 415 N.E.2d 1224 (1980). *Cf. Thermo King Corp. v. Strick Corp.,* 467 F.Supp. 75 (W.D.Pa.) (the test for "conspicuous" under the UCC is "whether a reasonable person against whom the modification or exclusion is to operate ought to have noticed it"), *aff'd,* 609 F.2d 503 (3d Cir.1979); UCC, 13 Pa.Cons.Stat.Ann. § 2316(b) (Purdon 1984) (to exclude or modify an implied warranty of merchantability and/or fitness, the language must be conspicuous).