**Gregory M. MAKOZY, and His Wife, Maria Makozy, Appellants**

v.

**Frank MAKOZY, and His Wife, Angela Makozy.**

Superior Court of Pennsylvania.

Argued March 30, 2004.

Filed March 22, 2005.

Thomas J. May, Butler, for appellants.

Bruno A. Muscatello, Butler, for appellees.

Before: FORD ELLIOTT, LALLY–GREEN, and TODD, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 This is an appeal from a judgment entered in favor of Frank Makozy ("father") and Angela Makozy ("mother") (collectively "parents") and against Gregory Makozy ("son") and Maria Makozy ("daughter-in-law") (collectively "children") following a two-day non-jury trial. Children filed a claim sounding in equity, alleging the existence of a constructive trust regarding legal title to children's real property, which title children had conveyed to parents; and damages resulting from children's inability to refinance the mortgage on the property at a lower interest rate as a result of parents' refusal to reconvey the legal title to children. Parents filed a counterclaim, claiming breach of four oral contracts wherein parents loaned children certain agreed upon sums of money, which children had not fully

repaid and on which parents asserted damages in the form of the unpaid balance plus interest and other costs. For the reasons that follow, we affirm in part and reverse in part.

¶ 2 Certain facts, which we set forth here, are not in dispute. On or about March 22, 1994, children purchased a home at 115 Sturbridge Drive, Evans City, Pa. for $256,000. According to son's testimony, children used $64,000 from the sale of their Norristown, Pa. townhouse as a down payment on the house. (Notes of testimony, 7/12/02 at 20.) By deed dated April 30, 1994 and recorded May 31, 1994, children conveyed a one-half interest in their home to parents in consideration of $1.00. Children conveyed the other one-half interest in their home by deed dated September 18, 1996 but not recorded until February 6, 1998, also in consideration of $1.00. During this same time period, parents loaned son the following sums of money:

**Loan 1:**

January 6, 1994

Amount of loan—$30,000

Interest: 10%

Interest paid: $3,000.00

¶ 3 Among the issues regarding this loan was whether the interest was for one year only or per annum until the balance of the loan was repaid. The parties agreed son had repaid a portion of the loan, but disagreed as to the amount he still owed. Also at issue was the purpose of and due date for the loan.

**Loan 2:**

February 15, 1995

Amount of loan—$7,500

Due date: February 15, 1995

¶ 4 Among the issues regarding this loan was whether the parties agreed children would pay interest on the loan, which was used to obtain a bail bond in connection with numerous criminal charges pending against son in Allegheny County in connection with his business. When the bail bond was released following son's trial, in November of 1995, son requested that father release the money to son's attorney to be used to file an appeal, and father acquiesced.

**Loan 3:**

November 30, 1995

Amount of loan: $78,300 out of $100,000 required for straight cash appeal bond

¶ 5 At issue was the amount father was entitled to be reimbursed for the loan; whether the parties agreed son would pay interest on the loan; and whether son agreed to pay any and all costs parents incurred to assemble the funds for the loan, which was used for a straight cash appeal bond so that son could continue working in Norristown during the pendency of his appeal.

**Loan 4:**

November 5, 1998

Amount of loan: $25,000

Interest: 6%

Amount paid: $5,000

¶ 6 This loan was used to pay part of the $88,000 in restitution the court ordered son to pay to the victims following his conviction for theft by failure to make required disposition in Allegheny County. At issue was whether the interest increased to 7.2% after the first six months and whether the interest was compounded monthly.[1]

---

1. Son also pled guilty in federal district court to charges of embezzlement from a bank in Uniontown, PA, and was sentenced to 18 to 24 months' incarceration in federal prison in Loretto, Pa., beginning in June of 1996. Son was ordered to pay $33,000 in restitution with regard to these charges. (Notes of testimony, 7/12/02 at 73–74.)

¶ 7 In May of 1999, son was attempting to refinance the Sturbridge Drive house at a lower interest rate and asked parents to reconvey the legal title to the house to children. Father refused to comply until son repaid the balance due on the loans. The parties disputed this balance: father claimed son owed him approximately $50,000, while son offered to re-pay parents $25,000. Following failed and angry attempts to reach an agreement, children filed the aforementioned complaint in equity on September 20, 1999.[2] In their amended complaint, children asked the court to establish a constructive trust in the house for the benefit of children and also asked the court to award children $210,780 in extra interest they would be forced to pay because they could not refinance the house at a lower interest rate and over a shorter term. (Amended complaint in equity, 1/14/00, R. at 7.)

¶ 8 In response, parents filed a counterclaim on October 13, 1999 for breach of four contracts, claiming damages in the amounts of $18,180 through August 6, 1999 on Loan 1, plus accruing interest at 10% compounded annually on the unpaid balance; $10,612 through August 15, 1999 on Loan 2, plus accruing interest at 8% compounded annually on the unpaid balance; $75 on Loan 3 through August 1, 1999, plus accruing interest at 9% compounded annually on the unpaid balance; and $21,218 through August 4, 1999 on Loan 4, plus accruing interest at 7.2% compounded monthly on the unpaid balance. Each count also asked the court to award "costs and such other and further relief as the Court may deem just." (Answer, New Matter and Counterclaims, 10/13/99, R. at 2.)

¶ 9 On July 12, 2002 and July 18, 2002, the court, sitting in equity, tried the case non-jury. Both parties vigorously argued their version of the events leading up to the loans, all of which were based upon oral agreements; the terms and conditions of loans, including interest rates, if any; son's other alleged promises to reimburse parents for the costs they incurred in procuring the loans; and the reasons and terms under which children transferred legal title in the Sturbridge Drive house to parents. At the conclusion of testimony, both attorneys presented argument to the court, which then asked the parties to submit proposed findings of fact and conclusions of law.

¶ 10 On August 16, 2002, the court filed its memorandum opinion and non-jury decision, containing findings of fact and conclusions of law. The court found parents' version of the facts more credible than son's.[3] (Trial court opinion, 8/16/02 at 1–3,

---

2. For example, in a letter responding to father's demand for $50,000, son wrote:

> Mom,
> Your figures are totally off. Just read the enclosed computations. There will be no further money paid. You are even lucky I am being so generous.
> Because of your stupidity, you cost me, $210K in interest because I couldn't close on my refinance.
> I have enclosed the exact pay-off I owe you for the loans. By the way, none of them are attached to my house.
> I have enclosed a FED–X package for pick-up today. If my power of attorney papers are not delivered on 6–17–99, I will put a stop payment on all checks & you will get nothing.
> I already contacted an attorney, not an invisible one like you have. You are only custodian owners of the property because you never paid for the house or taxes on it. If this turns into legal action, all fees will be deducted from this $26K I am paying.
> I think it is best this is signed & taken care of peacefully.
> Sincerely,
> Greg

Defendant's Exhibit A.

3. Daughter-in-law did not testify at trial, and defense counsel asked the court to draw an

R. at 24.) In its legal analysis, the court found insufficient evidence to support a constructive trust because it found no confidential relationship between parents and children so as to defeat the Statute of Frauds, which bars the enforcement of all oral agreements modifying a deed or land transfer. (*Id.* at 3–5.) The court further found that the Statute of Limitations did not bar parents' claims for breach of contract, either based upon the acknowledgement doctrine or because the dates of the loans fell within the four-year statute. (*Id.* at 5–7.) The court therefore ordered that judgment be entered in favor of parents in the amount of $63,523.67, the amount of the unpaid balance on the loans, plus the agreed upon interest, plus $19,798,00 in dividend losses, plus 6% simple interest from January 1996 until July 2002. (*Id.* at 8.) This order was entered August 19, 2002.

 ¶ 11 Children filed a timely motion for post-trial relief, claiming the court's factual findings were based on insufficient evidence, against the weight of the evidence, and/or contrary to law. By memorandum opinion and order docketed March 10, 2003, the court denied children's post-trial motions. (Memorandum opinion and order, 3/10/03, R. at 30.) Children filed an emergency motion to modify the non-jury decision on March 19, 2003, apparently unaware the court had already denied their post-trial motions. (Emergency motion to Modify Non–Jury Decision, 3/19/03 at 2 ¶ 3, R. at 31.) The court denied the motion the same day, and parents praeciped for entry of judgment in the amount of $97,208.78 plus interest from March 12,

2002 and costs, on April 7, 2003. (R. at 32.) Children filed their appeal on May 2, 2003, in which they raise the following issues: [4]

I. Whether the verdict of the trial court should be reversed since it was not supported by substantial evidence of record.

II. Whether the Court erred in failing to find that any of [parents'] claims were barred by the Statute of Limitations.

III. Whether the Court erred in failing to award [children] damages.

Appellants' application for reargument/reconsideration at Exhibit G. In their prayer for relief, children ask us either to enter judgment in their favor or to grant a new trial as to all issues. We will address appellants' issues together insofar as we find them intermingled.

 ¶ 12 "Procedurally, the question before this Court is the propriety of the lower court[']s rulings upon appellants['] motion for judgment notwithstanding the verdict ('judgment n.o.v.'). That verdict was rendered by the trial judge, who sat as the factfinder in this equity action." *Shamnoski v. PG Energy, Div. Of Southern Union Co.,* 579 Pa. 652, 659, 858 A.2d 589, 593 (2004). "Our scope of review with respect to whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law." *Id.,* citing *Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

'The proper standard of review for an appellate court when examining the lower court's refusal to grant a judgment n.o.v. is whether, when reading the rec-

---

adverse interest as a result. (Notes of testimony, 7/18/02 at 108.)

**4.** Children's counsel inadvertently omitted their issues from their appellate brief but included them in a motion for reconsideration, filed after this court dismissed children's ap-

peal for other reasons, not herein germane. This court having granted the motion for panel reconsideration, and the original appellate brief having organized its argument section to address each of the issues, we will consider the issues despite the inadvertent omission.

ord in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft,* 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989). Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. *Commonwealth, Dep't of Transp., Bureau of Traffic Safety v. Korchak,* 506 Pa. 52, 57, 483 A.2d 1360, 1362 (1984).'

*Id.,* quoting *Adamski v. Miller,* 545 Pa. 316, 319, 681 A.2d 171, 173 (1996).

¶ 13 When deciding whether the trial court erred in denying a motion for a new trial because the verdict is against the weight of the evidence, our supreme court has opined:

Given the unique nature of the power reposed in the trial court concerning a weight claim, this Court has emphasized on a number of occasions that, '[o]ne of the least assailable reasons for granting [or denying] a new trial is the lower court's conviction that the verdict was [or was not] against the weight of the evidence and that new process was [or was not] dictated by the interests of justice.'

*Armbruster v. Horowitz,* 572 Pa. 1, 10, 813 A.2d 698, 703 (2002), quoting *Commonwealth v. Brown,* 538 Pa. 410, 436, 648 A.2d 1177, 1189–1190 (1994) (other quotations and citations omitted). As the *Armbruster* court continued, "Accordingly, where the reasons for the trial court's granting or denying a new trial appear in the record, this Court has held that only a palpable abuse of discretion will warrant upsetting that decision on appeal." *Id.* (citation omitted).

■ ¶ 14 Furthermore, " 'A new trial based on weight of the evidence issues will

not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial.' " *Daniel v. William R. Drach Co., Inc.,* 849 A.2d 1265, 1267 (Pa.Super.2004), quoting *Nemirovsky v. Nemirovsky,* 776 A.2d 988, 993 (Pa.Super.2001).

'Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the [trial court], and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion.'

*Id.,* quoting *Turney Media Fuel, Inc. v. Toll Bros., Inc.,* 725 A.2d 836, 841 (Pa.Super.1999). The trial court, sitting as fact-finder, is free to believe all, part, or none of the evidence presented. *Stokes v. Gary Barbera Enterprises, Inc.,* 783 A.2d 296, 297 (Pa.Super.2001), *appeal denied,* 568 Pa. 723, 797 A.2d 915 (2002).

■ ¶ 15 With due consideration for the scope and standard of our review, we have read in its entirety the transcript of the two-day trial. Both sides presented extensive, and conflicting, evidence as to the terms, duration, and amounts of the loans and as to the terms under which children conveyed their real property to parents. The trial court, sitting as fact-finder, was in the best position to weigh the evidence based upon its assessment of the witnesses' credibility. As the court stated, "The court found [parents'] evidence and testimony to be convincing and credible. On the other hand, the Court found the evidence and testimony put on by [children] to be unpersuasive and lacking in credibility and so the Court weighed the evidence and made its finding of fact accordingly." (Trial court opinion, 3/10/03 at 3.)

¶ 16 Children argue, however, that the court should not have admitted evidence of statements son made during a preliminary sentence investigation ("psi") prior to being sentenced in federal court as the statements were contained in an unauthenticated, confidential report that constituted hearsay. (Appellants' brief at 21–22.) Children have not developed this argument or cited to any cases in support of their position, nor did they raise this argument in their post-trial motions; therefore, we find it waived.[5] Pa.R.Civ.P. 227.1(b)(2), 42 Pa.C.S.A.

¶ 17 Additionally, while we agree with children that father and mother testified with less precision and consistency than son, we do not agree that parents' inconsistencies rendered their testimony unbelievable, or even less credible than son's. A fact-finder determines credibility in part based upon the consistency of a witness' testimony, but also relies heavily upon the witness' demeanor. "In the usual case, we are bound by the chancellor's findings of fact, including findings regarding the credibility of witnesses, because the chancellor has the opportunity to hear the witnesses and observe their demeanor on the stand." *In Re Estate of Rosen*, 819 A.2d 585, 589 (Pa.Super.2003), citing *Hera v. McCormick*, 425 Pa.Super. 432, 625 A.2d 682, 685 (1993).

¶ 18 Furthermore, as noted *supra*, parents' counsel requested the court to draw an adverse inference from daughter-in-law's failure to testify. (Notes of testimony, 7/18/02 at 108.) We therefore find nothing in our review of the cold record to indicate that the evidence so clearly and unequivocally supported children's position that the trial court palpably abused its discretion in denying children's motion for j.n.o.v. or a new trial.

¶ 19 Regarding children's claims of legal error, children alleged in their complaint in equity the creation of a constructive trust when they transferred legal title to their real property to parents. The court found, however, that children transferred a one-half interest in the property, albeit several months after parents made the first loan of $30,000, as collateral for the loan in the event children were unable to repay it. The court found that children transferred the remaining interest to parents as collateral for loans two and three, in the amounts of $7,500 and $78,300. Additionally, because the Statute of Frauds bars oral real estate transfers in the absence of a confidential relationship, the court found the facts before it distinguishable from the facts of *Chambers v. Chambers*, 406 Pa. 50, 176 A.2d 673 (1962); and *Brasile v. Estate of Louis Brasile*, 354 Pa.Super. 400, 512 A.2d 10 (1986), *appeal denied*, 514 Pa. 615, 521 A.2d 930 (1987), two cases on which children relied. (Trial court opinion, 3/10/03 at 4.)

¶ 20 In *Chambers, supra*, the court observed, " 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him to a trustee.' " *Chambers, supra* at 55, 176 A.2d at 675, quoting Justice (then Judge Cardozo) in *Beatty v. Guggenheim Exploration Co.*,

---

**5.** Our review of the record indicates the court admitted the statements for impeachment purposes as admissions by a party. (Notes of testimony, 7/18/02 at 58.) The report indicated son explained to the investigator that he borrowed the first loan in the amount of $30,000 as partial down payment on the Sturbridge Drive property, and that following son's loss of employment, father had been making the mortgage payments and helping with other expenses. (*Id.* at 60.)

225 N.Y. 380, 386, 122 N.E. 378, 380 (1919). Continuing, the *Chambers* court, quoting *Beatty,* observed, " 'The equity of the transaction must shape the measure of relief.' " *Id.,* quoting *Beatty, supra* at 389, 122 N.E. 378 at 381.

¶ 21 In both *Chambers* and *Brasile, supra,* however, the parties seeking a constructive trust conveyed the real property to avoid the possibility of its being reached by lien creditors. In this case, in contrast, the court found that children conveyed the property as collateral for loans from parents in the event children were unable to repay the loans. Thus, we find this case distinguishable from the cases on which children rely.

■■■ ¶ 22 In addition, we agree with the trial court that the Statute of Frauds bars children's claim because they were not in a confidential relationship with parents at the time they conveyed the property. *See Kadel v. McMonigle,* 425 Pa.Super. 253, 624 A.2d 1059, 1061 (1993) (holding that the Statute of Frauds bars the enforcement of all oral agreements modifying a deed or land transfer), *appeal denied,* 539 Pa. 652, 651 A.2d 539 (1994). The Statute specifically excludes from its ambit, however, " 'any conveyance ... by which a trust or confidence shall or may arise or result by implication or construction of law.' " *Silver v. Silver,* 421 Pa. 533, 536 n. 3, 219 A.2d 659, 661 n. 3

(1966), quoting Act of April 22, 1856, P.L. 532, § 4, 33 P.S. § 2.

■■■ ¶ 23 In this case, the trial court, relying in part on *Silver, supra,* found that parents were not in a confidential relationship with children where son possessed both the educational background and work experience with mortgage transactions to preclude any need or reason for children to look to parents as advisors and counselors. (Trial court opinion, 8/16/02 at 4–5.) As the *Silver* court opined, "It is necessary that both a confidential relationship and reliance upon a promise to reconvey induced by that relationship be shown." *Silver, supra* at 537, 219 A.2d at 661–662.

¶ 24 The trial court in this case, having found that parents did not promise to reconvey the property on demand, therefore necessarily concluded that children did not rely on any purported promise on parents' part to reconvey the property on demand as an inducement to transfer the property to parents. *Cf. Silver, supra* at 537–538, 219 A.2d at 662 (opining that the mere fact of a mother/son relationship, without more, will not support a finding of a confidential relationship, although it is a factor that must be considered; but finding in that case that mother's reliance on sons to manage the property, pay taxes, and provide her with excess rent money supported the existence of a confidential relationship).[6]

---

6. In *Kadel, supra,* this court observed that our supreme court had adopted the Restatement (Second) of Trusts § 44 (1959) as an exception to the Statute of Frauds. *Kadel,* 624 A.2d at 1061. Subsections (1)(b) and (c) of that section provide:

> (1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee

holds the interest upon a constructive trust for the transferor, if

....

> (b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

> (c) the transfer was made as security for an indebtedness of the transferor.

*Id.* Because children did not argue subsection (c), we find the argument waived pursuant to Pa.R.Civ.P. 227.1(b)(2), 42 Pa.C.S.A. and Pa. R.App.P. 302(a), 42 Pa.C.S.A. We note additionally that in this case, children have not

 ¶ 25 Regarding the loans, the court found that children agreed to pay 10% interest, compounded annually, on the unpaid balance of the $30,000 loan. (Trial court's finding of fact, 8/16/02 at 1.) The court also found that children purchased the Sturbridge Drive property in March of 1994 and transferred to parents a one-half interest in their real property in April of 1994 as partial collateral for the $30,000 loan; that children made payments on the loan in 1994; but that children had made no payments since. Based on the testimony, the court determined that at the time of trial, the unpaid balance of the loan, including interest, was $24,046.82. (*Id.* at 2.)

¶ 26 We have found record support for the trial court's findings in father's testimony. (Notes of testimony, 7/12/02 at 139–140, 198–201.) Additionally, son testified that when he purchased the property, he paid $64,000 down, giving children a $64,000 equity interest in the property. (*Id.* at 18–19.) Thus, despite son's arguments to the contrary, a one-half interest in the property was not inordinate collateral for the $30,000 loan.

 ¶ 27 Children claim parents' counterclaim for this loan is barred by the four-year Statute of Limitations for contracts, however, having been entered in January of 1994 and due in January of 1995. The trial court disagreed, relying on *Huntingdon Finance Corp. v. Newtown Artesian Co.*, 442 Pa.Super. 406, 659 A.2d 1052 (1995), a case addressing the requirements for invoking the acknowledgement doctrine to toll the Statute of Limitations. (Trial court opinion, 3/10/03 at 5–6.):

> Pursuant to the 'acknowledgement doctrine,' a statute of limitations may be tolled or its bar removed by a promise to pay the debt.

'A clear, distinct and unequivocal acknowledgement of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute. There must, however, be no uncertainty either in the acknowledgement or in the identification of the debt; and the acknowledgement must be plainly referable to the very debt upon which the action is based; and also must be consistent with a promise to pay on demand and not accompanied by other expressions indicating a mere willingness to pay at a future time. A simple declaration of an intention to discharge an obligation is not the equivalent of a promise to pay, but is more in the nature of a desire to do so, from which there is no implication of a promise.'

*Huntingdon Finance*, 659 A.2d at 1054, quoting *Gurenlian v. Gurenlian*, 407 Pa.Super. 102, 595 A.2d 145, 151 (1991), quoting *Maniatakis' Estate*, 258 Pa. 11, 101 A. 920 (1917).

¶ 28 We agree with the trial court that, based on its finding that children transferred a one-half interest in their property to parents on April 30, 1994 and the other one-half interest on September 18, 1996, recorded February 6, 1998, to ensure that parents would receive the full amount children owed them, children acknowledged their debt to parents. (*Id.* at 5, 101 A. 920.)

¶ 29 Of equal significance, we note that son acknowledged his debt to parents in his letter, footnoted *supra*, in which he calculated the amount he still owed on each loan. (Defendants' Exhibit A.) In this case, as in *Huntingdon Finance*, we find son's letter acknowledging that he owed $9,763 on the $30,000 loan, accompanied by checks in the amount of $26,448.43

---

repaid the loans for which parents claim they held the property as security.

to pay off son's estimate of the balance he owed on all of the loans, constitute an acknowledgement of the $30,000 debt. (Defendant's Exhibit A.) As the *Huntingdon Finance* court observed, "There can be no more clear and unequivocal acknowledgement of debt than actual payment, thus removing the statute of limitations with respect to the principal." *Huntingdon Finance*, 659 A.2d at 1054.

¶ 30 Children claim, however, the parents did not raise the acknowledgement doctrine at trial; therefore the court erred in relying on it. (Appellants' reply brief at 6.) Our review of the record indicates that parents' attorney questioned son regarding son's calculations of the amounts he owed on the loans, asking him, for example, "Did you acknowledge that in May or June of 1999 you still owed nine thousand seven hundred and sixty-three dollars on a thirty thousand dollar loan?" (Notes of testimony, 7/12/02 at 117.) While son testified those were calculations, not an acknowledgement (*id.*), we find no meaningful distinction. We also find that counsel's questions raised the acknowledgement doctrine for purposes of tolling the Statute of Limitations.

¶ 31 Additionally, we note that appellants' attorney argued the acknowledgement doctrine, specifically citing *Huntingdon Finance, supra,* in his closing argument, albeit for the proposition that children should not be required to pay interest on any claims barred by the Statute of Limitations but to which the acknowledgement doctrine arguably allowed recovery. (Notes of testimony, 7/18/02 at 131–132.)

¶ 32 As the *Huntingdon Finance* court observed:

> Appellee's payment of principal cannot be construed as a promise to also pay the interest when appellee never acknowledged such a duty. As the trial court found:

>> To the best of our recollection, the issue whether defendant owed interest was in dispute both prior to and at the time that defendant tendered a check for the principal due. Indeed, defendant vigorously litigated any duty to pay any interest in the underlying action.

*Huntingdon Finance*, 659 A.2d at 1055, quoting slip op. 11/1/94 at 5.

¶ 33 Thus, to the extent the trial court in this case included in its damages award an assessment of unpaid interest on the $30,000 loan, we must agree with the *Huntingdon Finance* court that the aforementioned acknowledgement does not extend to the corresponding interest. Neither parents nor the trial court "cite to any place in the record where [children] acknowledged a duty to pay the contested interest." *Id.* The only interest son acknowledged regarding the $30,000 loan was 10% for the first year, which it is uncontested he paid. Thus, we must disagree with the court's determination that children still owe $24,046.82 on the $30,000 loan and remand to the trial court to recalculate the amount due on the $30,000 loan, excluding interest.

¶ 34 With regard to the $7,500 loan, the trial court found it was not barred by the four-year Statute of Limitations for contracts because, although father originally loaned son the money in February of 1995, that loan was repaid in November of 1995 when the court released son's bail, at which time father, at son's request, re-loaned son the money to pay son's attorney's fees for an appeal. (Trial court opinion, 3/10/03 at 6.) Thus, parents' filed their October 13, 1999 counterclaim within four years of the November 1995 loan.

¶ 35 Likewise, parents' claim for the principal and interest due on the third loan to which parents agreed at the end of November 1995, for which parents raised $78,300 out of a total of $100,000 son required for a straight cash appeal bond, fell within the Statute of Limitations. Children vehemently argue, however, that the court erred in allowing parents to amend their pleadings to include as damages for this claim approximately $19,000 in dividends parents lost because they were forced to sell shares of stock in three companies to fund this loan. According to children, the claim for dividends constituted a new cause of action, not a mere amplification of the existing claim. Furthermore, children claim they were surprised and prejudiced by the amendment as they were unable to pursue discovery or otherwise challenge the claim. (Appellants' brief at 23–25.)

¶ 36 We have reviewed the cases both the parties and the trial court cite and find no error in the court's allowing parents to amend their complaint for several reasons. First, we note that the prayer for relief in each of parents' counterclaims requested the court to award specific amounts of damages, "plus costs and such other and further relief as the Court may deem just." (Parents' Counterclaim, 10/13/99 at 9, R. at 2.) As our supreme court opined when reviewing a similar situation:

'Under the prayer for general relief, a decree which accords with the equities of the cause may be shaped and rendered; the court may grant any appropriate relief that conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by the special prayer.'

*Lower Frederick Tp. v. Clemmer*, 518 Pa. 313, 332, 543 A.2d 502, 512 (1988), quoting *Meth v. Meth*, 360 Pa. 623, 625–626, 62 A.2d 848, 849 (1949) (citations omitted).

¶ 37 As the *Clemmer* court, quoting *Meth*, continued, " 'Under the prayer for general relief, the plaintiffs are entitled to such relief as is agreeable to the case made in the bill, though different from the specific relief prayed for.' " *Id.*, quoting *Meth, supra* at 625–626, 62 A.2d at 849 (other citations omitted). "A prayer for general relief is as broad as the equitable powers of the court. 30A C.J.S., Equity § 607(b). Under such a prayer a chancellor in equity may grant any relief that is consistent with the theory and purpose of the action." *Clemmer, supra* at 332, 543 A.2d at 512. In *Clemmer*, plaintiffs requested the court to "grant to Plaintiff such other and further relief as may be necessary, just, reasonable and proper." *Id.*

¶ 38 We recognize in this case that it was children, not parents, who initially invoked the equitable powers of the court, as parents' counterclaims were for breach of contract. The court was, nonetheless, required to determine the equities between the parties in its findings of fact and conclusions of law.

¶ 39 Additionally, we do not agree with children that parents' request for lost dividends constitutes a new cause of action and find this case clearly distinguishable from *Morthimer v. Searles*, 73 D. & C.2d 396 (1975), the case on which children rely.[7] In that case, Morthimer initially requested damages in the amount of $50,000 based upon the difference between what Searles, as president of County Holding Company, paid Morthimer for her

---

7. "We recognize that common pleas court decisions are not binding on appellate courts." *Rosen*, 819 A.2d at 590 n. 4, citing *Jamison v. Concepts, Plus, Inc.*, 380 Pa.Super. 431, 552 A.2d 265, 267 (1988) (other citation omitted).

newspaper business and the purchase price Searles received shortly after the purchase from a third party, of which Searles had knowledge when he exercised his option to purchase the newspaper for the lesser amount. *Id.* at 396–397. In that transaction, Searles paid Morthimer $100,000 for the business, making a down payment of $25,000 and giving a mortgage for $75,000, and then immediately resold the business for $150,000.

¶ 40 Morthimer subsequently sought to amend the amount of damages to include an additional $75,000, claiming Searles knew or had reason to know County Holding Company was financially unable to service or pay off the $75,000 mortgage without a resale of the business. *Id.* at 397. In denying the amendment, the court, quoting 3 Standard Pa. Practice § 20, opined, " 'One test to be applied to the question whether an amended complaint presents a new and different cause of action is ... whether the same measure of proof is required.' " *Morthimer*, 73 Pa. D. & C.2d at 399, quoting 3 Standard Pa. Practice § 20 at 682. Continuing, the *Morthimer* court stated, " 'Proof of the existence of additional facts required to sustain an action as amended is another test for determining whether the amendment introduces a new cause of action.' " *Id.*, quoting 3 Standard Pa. Practice § 20 at 682.

¶ 41 Finding that plaintiff would have to prove that County Holding Company was insolvent, that Searles knew of its insolvency at the time of the sale, and that Searles would have to defend against such a charge, the court found the additional damage claim set forth a new cause of action. *Id.*

¶ 42 In this case, in contrast, the additional damages parents claim are part of the loss they sustained in financing their $78,300 loan to son. According to both parents' testimony, son knew his parents, who lived on a fixed income, had difficulty raising the money and therefore promised them he would make them whole. (Notes of testimony, 7/12/02 at 178.) Additionally, in his March 2001 deposition, father mentioned the dividends as damages, and children's counsel acknowledged at trial he was aware of the lost dividends at the time of the deposition. (*Id.* at 190.) The trial court in this case also gave children's counsel as much time as necessary after the record was closed to present documentation refuting parents' claim. (*Id.* at 180.)

¶ 43 We thus find this case more closely akin to *Ecksel v. Orleans Constr. Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987), on which parents rely. After setting forth the law applicable to liberal amendment of the pleadings, the *Ecksel* court observed that allowing Ecksel to increase his claim for damages from $20,000 to $52,100 based on breach of contract, including breach of the implied warranty of habitability and of reasonable workmanship, did not allege a new cause of action and was based on the same operative facts as the original breach of contract action. *Id.* at 131, 519 A.2d 1021. The court further found that construction company was neither prejudiced nor surprised because they were aware of Ecksel's desire to increase his claim for damages nearly one year before Ecksel petitioned the court to allow the amendment. *Id.*

¶ 44 Similarly, in this case, parents' counterclaims alleged breach of four loan agreements and damages resulting therefrom. The loss of dividends, rather than stating a new cause of action, merely amplified the damages parents claimed as a result of children's breach of the third loan.

¶ 45 For the foregoing reasons, we vacate the judgment in part to allow the trial court to recalculate damages for breach of

the first loan without including interest on that loan. We affirm the judgment in all other respects.

¶ 46 Judgment is affirmed in part and vacated in part. Case is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.